## Smith v. Commonwealth, for use, et al.

### (Decided April 27, 1917.)

### Appeal from Boyle Circuit Court.

1. Licenses—Vehicles.—To license a vehicle must be either to grant the privilege of its ownership or use.

2. Statutes—Title of Act.—If all the provisions of an act relate to the same subject, are naturally connected and are not foreign to the subject of the title, it is sufficient to meet the requirements of section 51 of the Constitution.

3. Statutes—Title of Act.—If the title of the act is such as to put the legislative body upon notice of its contents, and the contents are not foreign to the title and not matters which would not be anticipated under such a title, the act will not be repugnant to section 51 of the Constitution.

4. Licenses—Power to License or Tax.—The General Assembly is authorized to impose a license tax upon the privilege of the use of anything, which it would be justified in regulating and supervising under the police power of the state.

5. Constitutional Law—Police Power in General.—Police power is a sovereignty inherent in the state and founded in necessity, and which it is the duty of the government to exercise for the benefit of its people, whenever public policy demands regulations to protect their morals, safety, health and order, or to insure such economic conditions as are required by an advanced civilization.

6. Licenses—Constitutional Law—Police Power in General.—The General Assembly, by virtue of the police power of the state, is authorized to enact laws for the regulation and supervision of motor vehicles, and to exact a license for the privilege of their use of the public highways.

7. Licenses—Statutes—Police Regulations.—Where the primary purpose of a statute is to regulate and supervise the privilege of the use of a thing, and is not primarily a law for the purpose of raising revenue, the fact that the license fee imposed is greater than is necessary for the regulation and supervision, and therefore does produce revenue, does not thereby make it invalid as a police regulation.

8. Licenses—Motor Vehicles—Police Power—The regulation of motor vehicles and the imposition of a license tax, which is in excess of the cost of their regulation and supervision, for the privilege of using them upon the public highways, and which is applied to the improvement of the highways, is a valid exercise of the police power of the state, and the license tax may be graduated upon the basis of the injury wrought by the vehicles of different horse power to the roads.

9. Licenses—Taxation.—A license tax for the exercise of a privilege is not double taxation, although the property which is used in the enjoyment of the privilege bears an ad valorem tax.

10.    Licenses—Taxation.—A license tax upon one privilege and not upon another does not create inequality in taxation, when all the persons engaged in exercising the taxed privilege are required to bear the burden alike.

G. MURRAY SMITH for appellant.

CHENAULT HUGUELY, M. M. LOGAN, Attorney General, and CHARLES H. MORRIS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

The appellant, G. Murray Smith, who is a resident of the state of Kentucky, was charged by a summons, in the police court of the city of Danville, with a violation of section 2739, Kentucky Statutes, and particularly with having incurred the penalty denounced by subsection 31, of that section. From a judgment of that court finding him guilty of the offense charged, he appealed to the Boyle circuit court, and a trial in that court having resulted in a judgment of conviction of the offense, from its judgment, he has appealed to this court. The action was tried in the circuit court upon an agreed statement of facts, which are as follows:

(1)   The appellant, on the 4th day of June, 1916, drove on the public streets, of the city of Danville, an automobile, without first having registered it with the commissioner of motor vehicles and without having paid the license fee required by the statute, in question, for the year 1916, and at that time, exposed upon the vehicle a license tag for the year 1915, and which was for identification purposes only.

(2)   The operation of motor vehicles damages the highways and roads in the state of Kentucky, many times more than the use of them by vehicles drawn by animals.

(3)   The cost of registering an automobile, including the furnishing of the numbered tags, and maintaining the office of commissioner of motor vehicles, is less than the sum of one dollar for each automobile registered, and the cost of the registering of a motor vehicle of low horse power does not cost the state any more than the registration of one of high horse power.

(4)   The vehicle, owned and used by appellant, was one of the touring type and of less than twenty-five horse power, and had been listed by appellant for *ad valorem* taxes in the county of Madison, and city of

Richmond, and all *ad valorem* taxes due the state of Kentucky, county of Madison and city of Richmond had been paid.

The appellant offered a general demurrer to the summons, based upon the contention, that the statute, under which the prosecution against him was maintained, was contrary to the provisions of sections 51, 171, 174 and 11, of the constitution of this state, and the fourteenth amendment to the federal constitution, and that the act under which the prosecution was maintained was therefore void. The demurrer was overruled, and upon the facts, the court held him to be guilty of the offense charged, as it must necessarily have done, and assessed the penalty.

The matter presented for determination is the soundness of the judgment overruling the demurrer, since there is no contention that the judgment should not have been rendered, if the statute, which appellant was accused of violating, is a valid one.

(a) It is insisted that the entire statute is invalid, because it relates to two subjects, and that only one of these is expressed in the title, and for that reason the statute is in violation of section 51, of the constitution of the state, which provides: "No law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title. . . . ." The title of the act, which is chapter 88b, Kentucky Statutes, 1915, is, "An act to regulate, license and govern the use of motor vehicles." The act contains thirty-eight subsections. The first subsection defines what is meant by a motor vehicle when used in the act. By subsection 2, the owner of a motor vehicle is required to file an application, properly sworn to, in the office of the Secretary of State, with certain facts specified, to be stated in it, including the number, style and motor power of the vehicle, on blanks to be furnished by the Commissioner of Motor Vehicles, and pay to the commissioner a registration fee of six dollars on each motor vehicle of less than twenty-five horse power; eleven dollars on each vehicle of twenty-five horse power and less than fifty horse power; and twenty dollars on each vehicle of fifty horse power and over, and on each motorcycle a fee of five dollars. The date when the registration and registration fees fall due is provided for; that the Secretary of State furnish two distinctive number plates

to the party registering the motor vehicle, and, also, a certificate of registration, containing the distinctive number assigned to the vehicle, name and address of the owner, the name of the manufacturer, and its motor power; that the registration shall be entered in alphabetical order of the owner's name in a book kept in the office of the Secretary of State, which registration shall consist of the name of the owner, his address, registration number and the date of the filing of the application, and a description of the vehicle. Subsection 3 requires the owner of a motor vehicle, when using it upon the public highway, to display the number, which corresponds with the certificate of registration, upon the front and rear of the vehicle, and the Secretary of State is authorized to change the color of the license plates from year to year. Subsection 4 provides for the carrying by each motor vehicle of lighted lamps upon the front and rear of the vehicle, and the hours, when such lights shall be exhibited. Subsection 5 provides for the registering by the manufacturers and dealers in motor vehicles of certain vehicles of each class manufactured and dealt in by them in the state of Kentucky, and prohibits the use upon any of the public highways of this state of any motor vehicles until the owner shall have complied with subsections 2, 3, 4, and 5, of the act. Subsection 6 provides for the registering of a motor vehicle which has already been registered and thereafter sold by the owner. Subsection 7 prescribes the duties of non-resident owners of automobiles, who may operate the same in this state. Subsection 8 prescribes the duties of the operator of a motor vehicle upon the public highways with regard to the signal devices with which the vehicle shall be equipped, as well as the brakes necessary to be had upon it, and prohibits the leaving standing of such a vehicle upon the highway, or the giving of a signal from it when unnecessary. Subsection 9 prescribes the speed beyond which it is unlawful to operate a motor vehicle on any public highway, and the duties of the operator of such a vehicle when so doing. Subsections 10, 11, 15, 16, and 17 prescribe the duties of the operator of a motor vehicle when horses driven on the roads are frightened by the approach of the vehicle, and, also, his duty when passing where street cars are discharging passengers upon the public streets or highways and when meeting and passing other persons upon

the highways. Subsection 14 provides that the fees collected under the act shall be paid into the state treasury, to the credit of the state road fund, and shall be applied and set apart as an addition to the fund. Subsections 18, 19, 20, 21, 22, 23, 24, 25, and 26 provide for the creation of a board for the examination and licensing of chauffeurs; the amount of the license fee, and the granting of badges to the chauffeurs, and the manner in which they shall be worn, and under what circumstances the chauffeur may forfeit his license, and other duties of the chauffeur. Subsection 27 provides for the payment of these license fees and their appropriation to the state road fund.. Subsections 29 and 30 provide restrictions upon the operation of motor vehicles by intoxicated persons and infants, and prescribe penalties for the violation of the requirements of these sections. Subsection 28 provides for the settlements required of the board for the examination of chauffeurs. Subsections 31, 32, and 33 provide punishments for using fictitious numbers or a number after the registration for same has expired, and for making false statements in applications for registrations, and provides penalties for the various violations of the act. Subsection 34 provides for the appointment of a commissioner of motor vehicles and his duties and the clerical force which he may engage. Subsection 35 imposes a penalty upon the person who drives or operates a motor vehicle without the knowledge and consent of the owner. Subsection 36 prescribes the duty of the owner of a motor vehicle, whose chauffeur, while operating it, shall become intoxicated, and subsection 37 prescribes the duty of a court wherein a chauffeur is convicted of intoxication, and the remaining subsection only provides for the repeal of all laws which are in conflict with that statute.

Because subsection 14 and section 27 provide for the payment of the license fees into the state road fund and the title of the act provides only for the regulation, licensing, and governing the use of motor vehicles, it is insisted that the title of the act is only broad enough to justify an act strictly for the regulation of motor vehicles and that the payment of the license fees into the state road fund is the setting apart of the fees for a revenue purpose, that is, the improvement of the public highways, and for that reason the act relates to two subjects and therefore is void. Without, at this point,

entering into any discussion, as to whether the statute is one enacted in the exercise of the police power or is really a statute enacted for revenue purposes, only, under the guise of an exercise of the police power, it will be first determined whether the statute, in any of its provisions, is contrary to section 51, of the constitution, and the other questions involved will be hereafter adverted to. The use of motor vehicles consists in driving them upon the highways of the state. No other use is contemplated for such vehicles. To license necessarily means to grant a privilege, which is otherwise withheld. To license a vehicle must be either to grant the privilege of its ownership or its use. The title of the act contemplates licensing the use of them, or else the expression in it to "govern the use of motor vehicles" would be without signification or meaning. Hence, the ᵣatent meaning of the title is to regulate, permit and govern the use of motor vehicles upon the roads. Such a title relates to only one subject. To the ordinary mind, to license the privilege of using property, in a certain way, contemplates the exacting of fees or a tax for such privilege. The general rule often declared in determining whether a legislative act is invalid under the provisions of section 51 of the constitution, is, if all the provisions of an act relate to the same subject, are naturally connected and are not foreign to the subject expressed in the title, it is sufficient. Johnson v. City, 121 Ky. 594; Weber v. Commonwealth, 24 R. 1726; Diamond v. Commonwealth, 124 Ky. 418; Munn v. Bank, 107 Ky. 262; McGlone v. Womack, 129 Ky. 274; Commonwealth v. Starr, 160 Ky. 260. For the purpose of determining the question, the purpose of the constitution makers in putting into the constitution section 51, should be considered. It has been held that the purpose of that provision was to enable persons, who read the title of an act, to get a general idea of what the act treats, or contains, especially so, that the members of the General Assembly might not be misled into voting upon a measure contrary to what they would have done, if they had not been misled by the title as to the contents of the act. It has been regarded as a salutary provision to prevent the enactment of legislation, which would not have been otherwise done. If the title of the act is such as to put the members of the legislative body upon notice of its contents, the contents, if not foreign

to the title and not of matters which would not be anticipated under such a title, the legislation will not be repugnant to this provision of the constitution. Board of Trustees v. Tate, 155 Ky. 296; Henderson Bridge Co. v. Alves, 122 Ky. 46. It was held in Thompson v. Commonwealth, 159 Ky. 8; Hyser v. Commonwealth, 116 Ky. 410; Eastern Ky. Coal Lands Corporation, etc. v. Commonwealth, 127 Ky. 667, and in Phillips v. Cincinnati & Covington Bridge Co., 2 Met. 219, that a provision of a statute which directly or indirectly relates to the subject expressed in the title, has a natural connection therewith, and is not foreign to the same, should not be deemed to be within the inhibition of section 51, of the constitution. In Wiermier v. Commissioners of Sinking Fund, etc., 124 Ky. 377, the court said:

"A title to an act is not, in order to meet the requirements of the constitution, bound to contain all of the details of the body of the act. If so, the title would necessarily be as extensive as the body. All that is required is that the body of the act should be so related to the title as to be easily and naturally embraced within its terms, or as it is sometimes said, they must be germane to each other. The relation should be so natural and obvious that the ordinary mind will perceive it."

If the provisions of an act relate to one general subject and all of which are germane to that expressed in the title, the act will not be invalid as contrary to section 51, of the constitution, although some of the provisions might have relation to some other subject. Ex Parte Schuler, 139 Pac. 685. In McGlone v. Womack, *supra*, the title of the act was, "An act to promote the sheep industry and to provide a tax on dogs." This court held that the title related to only one subject, which was the promotion of the sheep industry by a tax on dogs, and that the act was not contrary to section 51, of the constitution, although the taxation of dogs was incidental to the purposes of the act. The court in substance further held that the license tax imposed upon dogs was intended to be a regulation of dogs and in that way to promote the sheep industry. Under these well established rules for the construction of section 51 of the constitution, whether the statute under consideration is one adopted in the exercise of the police power of the state or one for the purpose of obtaining revenue, alone, all of its provisions treat of but one general sub-

ject, and all are naturally connected with and germane to the subject set out in the title. An act, the title to which is to license motor vehicles, and a provision is contained therein fixing the license fee, would certainly be a provision relating to and connected with the title. A provision in such a statute, the title of which is substantially an act to regulate, license and govern the use of motor vehicles upon the public roads, a provision in it for the disposition of the license fees when obtained would certainly not be foreign to the object expressed in the title, but would be intimately connected with it. No one could be reasonably heard to complain that he could not anticipate from the reading of the title of an act, which provides for the regulating, licensing and controlling the use of a thing, that there would be provisions in the act providing for the collection of license fees, as well as for the disposition of them. Jackson v. Neff, 60 Southern Reporter 352. As said in Ex Parte Schuler, *supra,* a clause providing for the disposition of the license fees when collected would seem to be a necessity to the act.

(b) Further objection to the validity of the act in question is, that under the constitution of the state, the General Assembly is not authorized to enact a statute which regulates and governs the use of motor vehicles and requires a license fee of the owner, except under the police power of the state, and that under such power the General Assembly is not authorized to require a license fee which exceeds the cost of the registration and supervision of motor vehicles. It having been agreed that the cost of the registration of a motor vehicle, including the furnishing of the numbered tags, and maintaining the office of the commissioner of motor vehicles, is less than the sum of one dollar for each vehicle registered, and the act having required fees largely in excess of one dollar, it is insisted that its enactment was beyond the authority of the General Assembly and for that reason the act is invalid. It is conceded that it is a right inherent in the sovereignty of the state to regulate the use of motor vehicles upon the roads of the state, and it has been so held by many courts. Bowser & Co. v. Thompson, Judge, 103 Ky. 331; Levi v. City of Louisville, 97 Ky. 400; City of Covington v. Woods, 17 R. 927; Bozeman v. State, 7 Ala. App. 151; Jackson v. Neff, 64 Fla. 326. In Babbitt's Work on Motor Vehicles, section 156, it is said:

"In most of the states there are statutes regulating the use and operation of motor vehicles upon their highways. These statutes and their control over the use and occupation of the roads exist by virtue of what is known as the police power which belongs to every state, and extends everywhere within its borders."

The use of motor vehicles is deemed dangerous to the safety of the public, and especially to stand in need of public control. Within recent years the number of such vehicles has so increased that it has become imperatively necessary for the safety of the public and the proper execution of the laws, that the use of them upon the public thoroughfares should be held under rigorous control, and only recently has the public, as well as the law making powers, become aware of the extreme power of injury to the public highways of the state, possessed by motor vehicles. It has become apparent that a necessity exists for a large increase of the funds usually set apart for the maintenance of the public highways, on account of the great destruction wrought to them by the use of the motor vehicles. It seemed just to the General Assembly that the motor vehicles, the use of which was such a severe burden upon the roads, should bear the additional cost of keeping them in repair. It was probably the expectation of such unknown contingencies, that caused the constitution makers to insert section 174 in the constitution, which, among other things, provides:

"That nothing in this constitution shall be construed to prevent the General Assembly from providing for taxation based on income, licenses or franchises."

This provision, if any constitutional authority was necessary, would seem to authorize the General Assembly to impose a license tax upon the privilege of the use of any property, which it would be justified in regulating and supervising under the police power of the Commonwealth. Levi v. City of Louisville, *supra*. The police power is one which arises out of the doctrine of necessity and is inherent in every government. As said by the Supreme Court of the United States in Adair v. United States, 208 U. S. 161:

"There are, however, certain powers existing in the sovereignty of each state in the union, somewhat vaguely termed the police power, the exact description and limitation of which have not been attempted by the

courts. Those powers broadly stated and without, at present, any attempt at a more specific limitation, relate to the safety, health, morals and general welfare of the public."

The text writers, as well as the courts, have held that the police powers may be exercised touching the safety, health and morals and general welfare of the public. In 8 Cyc. 863, a definition of the police power of the state is attempted, and which is probably as specific as any which has been suggested, and is as follows:

"Police power is the name given to that inherent sovereignty, which it is the right and duty of the government or its agents to exercise, whenever public policy in a broad sense demands, for the benefit of society at large, regulations to guard its morals, safety, health, order, or to insure in any respect such economic conditions as an advanced civilization of a highly complex character requires."

Under the above principles there can be no doubt that it was within the power of the General Assembly to enact the statute assailed, as invalid, in this action, and a very cursory examination of it demonstrates the fact that it is a statute enacted primarily for the regulation and government of the use of motor vehicles upon the public roads in this state, and therefore a valid exercise of the police power of the state. It is comprehensive in its terms, and is intended to be a complete regulation of the use of motor vehicles, and the only question as to its validity when considered as a police measure, which could arise, is the excess of the license fee over the cost of registration and supervision of the vehicles, if such should be conceded to be the fact. It will be observed that the agreed statement of facts in this case does not contain a statement that the license fees are greater than are necessary to pay the cost of both the registration and supervision, after registration, of the use of motor vehicles. The agreement is that the cost of registration and the maintenance of the office of Commissioner of Motor Vehicles and the numbered tags, delivered to the owners of vehicles, is less than the sum of one dollar for each vehicle. It is, however, contended that as the cost of registering a vehicle of low horse power is just as great as the registration of one of greater horse power, that the exaction of a greater fee for the registration of vehicles over twenty-five horse

power than of those thereunder, can not be justified under the police power of the state. While it has been held that the execution of the license fee for the primary purpose of regulating and restricting occupations deemed dangerous to the public or to especially stand in need of public control, when imposed in the exercise of the police power and not that of taxation, and where the object of the imposition is not primarily to raise revenue, the fact that the fee demanded is greater than the expense of registering and issuing the license, and, therefore, does in fact produce revenue, is not sufficient to make it a tax or to make the act invalid on account of the want of authority in the state to exact such a license fee in the exercise of its police power, but in the case of City of Henderson v. Lockett, et al., 157 Ky. 366, relied upon by appellant, an ordinance of the city of Henderson provided a license fee for the registration of automobiles owned by the residents of the city of Henderson, and the license fee was fixed at five dollars for each vehicle not exceeding twenty horse power; ten dollars for each vehicle of from twenty to thirty horse power and fifteen dollars for each one exceeding thirty horse power, it was held that the municipality was not authorized to require a license fee of the owner of an automobile as a revenue measure, unless it was used for hire, in accordance with section 181 of the constitution, but might impose a license tax upon automobiles not used for hire under the police power granted to the city by its charter, and in defining the license tax which might be exacted under the police power, the court said:

"What is a reasonable fee is a question of fact, depending upon the particular circumstances; the cost of issuing the license certificate, together with the cost of registering, supervising and keeping in control the subject of the license; taking into consideration the area of the city, population, condition of public travel, etc."

However, in McGlone v. Womack, *supra,* the validity of what is known as the Dog Tax Law, in Kentucky, was involved. That law provides for the registration of each dog over four months' old by the assessor and the collection of the tax thereon of one dollar, which is paid into the state treasury, but kept in a fund separate from the general funds of the state, and the owner of sheep, which have been killed or suffered damages from the ravages of dogs, may present claims therefor to the

fiscal court and when the claim is allowed it will be paid out of the license tax on dogs collected in that county, and if any portion of the fund remains unexpended, it is paid to the common school fund of the county. This court held the law to be valid as an exercise of the police power of the state in its right to regulate dogs, upon the ground, that although dogs were a species of property and subject to an *ad valorem* tax, the state had a right to impose a license tax upon the privilege of owning and having a dog, and it had a right to require the ones enjoying such a privilege to pay the damages done to the sheep, which were committed by the ravages of the dogs as the condition upon which they were permitted to own or have them and the remainder of the fund, if any, to go to the public schools for the benefit of the children of the Commonwealth. The act in question, for the regulation of motor vehicles, would seem from the language of its second section to impose the license tax upon the ownership of the vehicle, but when the entire act is read and all of the sections considered together, it is apparent that it was the intention and purpose of the legislature to exact the license tax for the privilege of the use of the vehicle upon the roads of the state and that the license fee was graduated according to the destructiveness which would result to the roads from the use of the vehicles of greater or less horse power. Conceding that the regulation of the motor vehicle is a proper subject for the police power of the state, no reason appears why the license fee, after the necessary cost of registration and supervision of the vehicle has been satisfied, should not be appropriated to the improvement and repair of the public highways, which is made necessary by the wear and destruction of them caused by the motor vehicle, if, as was held in McGlone v. Womack, *supra,* it was lawful under the police power of the state to require a license tax for the privilege of the ownership of dogs, to be paid in satisfaction of the ravages of the dogs upon the sheep and the remainder of the fund, if any, to the common school fund of the county. While in some jurisdictions the validity of such a statute as the one in question, has been denied as a valid exercise of the police power of the state, where the license fees have been graduated according to the horse power of the engines and were in excess of the necessary cost of registration and super-

vision of the vehicle, and where the license tax is paid into the common school fund of the state; in other jurisdictions, statutes similar to ours and upon a similar principle to that declared in McGlone v. Womack, *supra,* have been. held to be valid and a valid exercise of the police power of the state. The principle, which it seems, is enunciated, is, that it is within the police power of the state to exact a license tax, in excess of the costs of regulation and supervision, where the subject is one within the police power, and to apply the excess to the remedying of the extraordinary and baleful effects of the exercise of the taxed privilege, as the application of the tax upon the privilege of keeping dogs to paying for their destruction of sheep, and the tax upon the privilege of operating motor vehicles upon the highways to repairing the damages to such highways, which are peculiarly the work of such vehicles, and in excess of that wrought by other vehicles. This line of cases has held that the regulation of the use of the motor vehicle upon the public highways, was authorized under the police power, and that a license fee could be exacted in excess of the cost of the registration and supervision of the vehicles, where the funds arising from the license taxes were devoted exclusively to the improvement and repairing of the public highways, and that it was proper to levy a graduated license tax in accordance with the horse power of the vehicle, which would be a tax upon each of them reasonably commensurate with its power of destruction to the highways. This is upheld upon the principle that such a graduated license tax in excess of the necessary cost of registration and supervision of the vehicles is in the nature of a toll in excess of that exacted of less destructive vehicles, for the privilege of the use of the roads, and a tax in proportion to their power of destruction was a just and reasonable basis upon which to levy the tax. Kane v. State, 8 N. J. L. 594; Jackson v. Neff, 60 So. R. 350; Bozeman v. State, 61 So. R. 604; State v. Ingalls, 135 Pac. 1176; In Re Heffert, 52 L. R. A. (N. S.) 949; Kane v. State, vol. 37, No. 3, Advance Sheets, Supreme Court Reporter, p. 30; Hendrick v. Maryland, 235 U. S. 610. The requirement that the motor vehicle should contribute to the upkeep of the public highways in proportion to their power to destroy them, in excess of other vehicles, which are used upon the roads, appeals to the sense of justice and fairness, and hence, we con-

clude that it is within the police power of the state and is a valid exercise of that power to enact a statute such as the one in question, where the primary purpose is for the regulation and control of motor vehicles, and to impose a license tax upon their use of the public highways, where the tax, after the expenses of the registration and supervision are satisfied, goes exclusively to the upkeep of the highways and to remedy the injuries, which the vehicles have caused, provided the license tax is not an unreasonable one, and the one fixed by the statute does not appear to be unreasonable, when compared with what is exacted in many other states.

(c) The appellant, further, insists that the statute in question is violative of sections 11, 171, and 174, of the constitution of the state, and of the fourteenth amendment to the federal constitution, in that the license tax levied upon the owners of automobiles, at the same time and for the same period that an *ad valorem* tax is, also, levied upon them, imposes upon them a double taxation. Double taxation, however, only arises when the same property is taxed twice, when it ought to have been taxed but once, and the second tax must be imposed upon the same property by the same authority during the same taxing period. 37 Cyc. 753-754. The license tax, however, authorized by the statute, in question, is not a tax upon the property in the motor vehicle, but it is a tax upon the privilege of using the vehicle upon the public roads. It has been continuously held, both in this state and elsewhere, that a license tax for the exercise of a privilege is not double taxation, although the property, which is used in enjoying the privileges, bears an *ad valorem* tax, and there is no constitutional objection to the levying of both. San Francisco v. Fry, 63 Cal. 470; Chesebrough v. San Francisco, 153 Cal. 564; Ex Parte Schuler, 139 Pac. 685; State v. Jones, 9 Idaho, 693; St. Louis v. Bircheor, 7 Mo. App. 169; Morgan v. Commonwealth, 98 Va. 812; Kane v. State, *supra;* State v. Ingalls, *supra;* Levi v. City of Louisville, 97 Ky. 398; City of Covington v. Wood, 17 R. 927. In Berry on Automobiles, section 90, is as follows:

"The requirement of uniformity and equality in taxation applies only to taxes in the proper sense of the word, levied with the object of raising revenue for general purposes, and not to such as are an extraordinary and exceptional kind, and is under a constitutional pro-

vision, providing for equality in taxation, to be restricted to taxes on property, as distinguished from such as are levied on occupations, business or franchises, and as distinguished from exactions imposed in the exercise of the police power rather than the power of taxation."

Neither does the imposition of a license tax upon one privilege and not upon another create any inequality of taxation, when all of the persons engaged in exercising the taxed privilege bear the burden alike, nor when those following the same calling are divided into classes for the purpose of taxation, provided the classification is reasonable and founded upon a real distinction and not merely an arbitrary one. 37 Cyc. 732; Hager v. Walker, 128 Ky. 1; Schuster v. Louisville, 28 R. 588. The license tax in the instant case is imposed upon all the persons who use motor vehicles upon the public highways, in accordance with a distinct and real classification. The Supreme Court of the United States, in the case of Kane v. State, *supra,* and in Hendrick v. Maryland, *supra,* held that a license tax imposed upon a non-resident owner of an automobile for the use of the public roads by virtue of the police power of the state, although the statute, which imposed it graduated the tax upon the basis of the horse power of automobiles, the imposition of such a tax was not any violation of the fourteenth amendment as to its "due process" clause. If not in violation of the due process clause when applied to the citizens of another state, it surely would not be liable to that infirmity when applied to a citizen of the state, which enacts and enforces the statute.

The judgment is, therefore, affirmed.

All members of the court sitting.