NATHAN MAYO, as Commissioner of Agriculture of the State of Florida, *Appellant*, v. THE AMERICAN AGRICULTURAL CHEMICAL COMPANY, a corporation of Florida, ET AL., *Appellees*.

En Banc.

Opinion filed April 22, 1931.

*Fred H. Davis*, Attorney Genl., and *H. E. Carter*, Asst., Attorneys for the Appellant;

*Milam, McIlvaine & Milam*, Attorneys for the Appellees.

BROWN, J.—This is an appeal taken from the final decree of the Circuit Court in and for Leon County, Florida, made and entered in the cause pending between the parties hereto on the 12th day of March, 1930, overruling defendant's demurrer to the bill of complaint, and granting a permanent injunction in said cause.

The bill of complaint attacks the constitutionality of Chapter 14510, Laws of Florida, Acts of 1929, and questions the validity of the construction placed thereon by Appellant, as Commissioner of Agriculture, requiring the manufacturers of fertilizer to show the materials from which certain properties are derived, and the percentage of

plant food in each ingredient entering into and forming a part of the contents of each package of fertilizer.

The appellant, as defendant in the court below, answered the bill of complaint in which answer was incorporated a general demurrer. The cause came on to be heard upon the bill, answer and demurrer and the replication thereto, and the evidence to be submitted by the parties, and the court being of the opinion that the issues could properly be disposed of on questions of law, without the submission of evidence, the matter was heard upon the bill, answer, demurrer and replication with the result that the demurrer incorporated in the answer was overruled, and the equities found to be with the complainants, and thereupon a perpetual injunction was granted restraining the appellant from enforcing, or attempting to enforce the regulations promulgated by the Department of Agriculture, as shown by Exhibit ''A'' of the bill of complaint, page 9 of the transcript.

The court below did not find it necessary to pass upon the constitutionality of the act, inasmuch as the court decided that the interpretation placed upon the act by the Commissioner of Agriculture in his ruling as to what the tags must show was not warranted by the language of the statute.

The learned Circuit Judge embraced in his final decree a well considered opinion, which reads in part as follows:

"That in the enactment of Chapter 14510, Laws of Florida, Acts of 1929, amending Section 3807 of the Compiled General Laws of Florida, 1927, the provisions of the section amended were re-enacted.

That the provisions of the old law requiring that certain information be printed on the tag prescribed were not changed by the amendment, except that by the

amendment attached to the old law certain additional information was required to be shown. This additional information required is:

'A statement giving in detail the percentage of plant food in each and every ingredient entering into and forming a part of the composition of the contents of the package, whether it is organic, or inorganic nitrogen as ammonia, and the kind and class of potash, together with a detailed analysis of each.'

The amendment then prescribes an amended form of tag designed to give the required information, or additional information as required.

There was no provision in the old law, nor in the old form of tag prescribed, requiring the giving of the percentage of organic and inorganic materials, and the kind and class of other ingredients and their percentage of plant food. The amendment required 'a statement giving in detail the percentage of plant food in each and every ingredient entering into the composition of the contents of the package' etc. The new form of tag prescribed is so framed that all the information required by both the old law and by the amendment can be given, when such form of tag is properly filled out.

There is no provision in the law as amended that can be construed as requiring the giving the percentage of the percentage of plant food in each ingredient, as required by the Commissioner of Agriculture in the form of tag prescribed by him: Exhibit "A" to the bill of complaint.

The Court holds that the form of tag, Exhibit "B" to the bill of complaint, would be in compliance with the form of tag prescribed by the amendment to the law; and would be giving all the information required to be given by both the old law and the law as amended. The duplication of this information at bottom of tag not necessary.

In deciding this case it will not be necessary to pass upon the constitutional questions raised by the bill of complaint as based on the form of tag as required by the Commissioner of Agriculture as exemplified by Exhibit ''A'' to the bill of complaint.

As to the question raised as to whether the law applies to commercial fertilizers and fertilizer materials not offered for sale, not sold, distributed or used in the State of Florida. On this point there is no justiciable question before the Court.

The premises considered, it is, therefore, ordered, adjudged and decreed that the demurrer in defendant's answer be and same is hereby overruled.

It is further ordered, adjudged and decreed that the defendant, Nathan Mayo, Commissioner of Agriculture of the State of Florida, be and he is hereby forever and permanently enjoined from requiring the use of the form of the tag as prescribed by him, exemplified by Exhibit ''A'' to the bill of complaint, or any form other than that prescribed by Chapter 14510, Laws of Florida, as in this decree construed.''

The statute begins by providing that:

''Every package of commercial fertilizer or fertilizer materials manufactured, imported, transported, distributed, stored, kept or offered for sale or sold in or into the State of Florida shall have securely attached a tag on which shall be plainly and legibly printed the name or brand of the commercial fertilizer or fertilizer materials; the name and address of the manufacturer or jobber; the net contents of the package in pounds; the chemical analysis stating the minimum percentages of total nitrogen as ammonia, and materials from which derived, available phosphoric acid, and materials from which derived; insoluble phosphoric acid, water soluble potash, and materials from which derived, and total available plant food; the maximum percentage of chlorine

moisture; and a statement of all the materials from which the commercial fertilizer or fertilizer material is made."

The form of tag is then set forth.

In a subsequent paragraph comes the following:

"In addition to the foregoing requirements, every package of commercial fertilizer or fertilizer materials manufactured, imported, transported, distributed, stored, kept or offered for sale, or sold in or into the State of Florida, shall have securely attached to a tag on which shall be plainly and legibly printed the name or brand of the commercial fertilizer or fertilizer materials and the name and address of the manufacturer or jobber, or printed upon the sack or other container in which said fertilizer or fertilizer material may be packed, *a statement giving in detail the percentage of plant food in each and every ingredient entering into and forming a part of the composition of the contents of the package, whether it is organic or inorganic nitrogen as ammonia, and the kind or class of potash, together with a detailed analysis of each of such ingredients in such package, separately stated as to each.* It shall not be necessary to set forth such additional information upon both the package and tag attached to the same, but one or the other methods of stating such additional information shall be used in every case."

We have italicized the clause the meaning of which is here in controversy.

It is contended by appellant that while it is true that the statute does not use the term percentage of percentage yet the form of guaranteed analysis as prescribed in the statute is equivalent to such requirement. In other words, if the organic nitrogen as ammonia constitutes one per cent of the total nitrogen as ammonia of that one per cent, must be shown the materials from which the same is derived,

and the percentage of such ammonia derived from each of the ingredients used to get that kind of ammonia. In other words, if the organic nitrogen as ammonia is derived from cotton seed meal, blood and tankage, then the analysis, under the law, must show the percentage derived from each of these materials, and if the organic nitrogen as ammonia constitutes one per cent the percentage of such ammonia derived from the different materials would, in effect, constitute the percentage of the percentage, yet the statute does not use the term percentage of percentage.

On the other hand, it is contended by appellees that the interpretation of the Commissioner of Agriculture of the 1929 law is equivalent to requiring a statement on the tag of the number of pounds of each ingredient, and requires divulging trade secrets; that the 1929 law in its original form in the Legislature required the showing of the number of pounds of each ingredient, but that after many hearings the law was amended so as not to require this information but simply to require the showing of the percentage of available plant food in each ingredient, in other words, a chemical analysis; that the history of the Act of 1929 with its amendments manifests clearly that no such requirement was contemplated by the Legislature.

Page 722 of the House Journal bears out the contention of appellees. It shows that an amendment was adopted changing the phrase ''number of pounds of'' to ''the percentage of plant food in'' each and every ingredient. The omission on final enactment of a clause of the original bill as introduced is strong evidence that the legislature did not intend that the statute should require that which was purposely omitted. It would seem that ''number of pounds of'' is quantitative, requiring the showing of the weight of each ingredient in the mixture, whereas ''percentage of plant food in'' each ingredient is proportionate and goes

to the analysis of the particular ingredient. One might require the revealing of trade formulas. The other probably would not.

It is insisted by appellees that if the statute be construed to mean what the appellant says it does, it would render the statute invalid, in that it would compel appellees to disclose their private trade formulas; citing a number of authorities. But appellant insists that this contention has been clearly decided adversely to appellees by the Federal Supreme Court in Corn Products Refining Co. v. Eddy, 249 U. S., 427, 63 Law ed. 689. It is not necessary for us to express any opinion upon this question. We might observe, however, that the statute here in question, as construed by the court below, would appear to be entirely constitutional in this respect under the principles laid down in Savage v. Jones, 225 U. S., 501, 56 Law ed. 1182.

The meaning of the statute is not as clear as it might be, but after a careful consideration of the record, the briefs and the oral arguments of counsel for the respective parties, we cannot say that the learned chancellor was in error in his conclusions, and the decree of the court below will therefore be affirmed.

Affirmed.

BUFORD, C.J., AND WHITFIELD, ELLIS, AND TERRELL, J.J., concur.

DAVIS, J., disqualified.