192 P.2d 723

**STATE BOARD OF BARBER EXAMINERS et al. v. WALKER.**

Nos. 5031, 5032.

Supreme Court of Arizona.

April 14, 1948.

160

Donofrio, Co. Atty., Warren L. McCarthy, Deputy Co. Atty., and Croaff & Croaff, all of Phoenix, for appellants.

Terrence A. Carson and Morris L. Gerst, both of Phoenix, for appellee.

UDALL, Justice.

These two appeals were ordered consolidated. The first was from a judgment dated July 16, 1947, granting Thelma L. Walker, petitioner (appellee), a peremptory writ of mandamus directing the State Board of Barber Examiners, respondents (appellants), to forthwith issue to petitioner a certificate to operate a barber school; the second appeal was from (a) an order of the trial court entered July 21, 1947, in the same cause, denying respondents' application for a stay of proceedings, and (b) a subsequent order directing that the certificate theretofore deposited with the clerk of the court, in accordance with the terms of the judgment, be forthwith delivered to the petitioner.

The record shows that at the request of a group of 15 to 20 Negro veterans and with the active aid and assistance of Major Shaw, Training Officer at the Veterans Administration, the petitioner, who for some time previous had been operating an accredited beauty school, undertook to establish in Phoenix a certificated barber school. There was no barber school then operating in the entire State of Arizona, and many of these veterans were financially unable to go, as was suggested by one of the re-

John L. Sullivan, Atty. Gen., Perry M. Ling, Asst. Atty. Gen., and Francis J.

spondents, to California where such training could be had. Chapter 67, article 1, A.C.A.1939, expressly provides for the establishment of such schools, and the G. I. Bill of Rights, 38 U.S.C.A. § 701, gives to all veterans monetary assistance in procuring "on the job training." Doubtless these particular veterans and their governmental advisers felt that with a Negro population in the Phoenix area of 11,000 and only four shops operated by members of their race an opportunity for gainful employment was presented. This school was subsequently approved by the Veterans Institutional and On The Job Training Council.

Petitioner's efforts to obtain a certificate, which began February 3, 1947, were all abortive; hence, on June 20, 1947, she filed with the Superior Court of Maricopa County the instant petition for a writ of mandamus. The matter came on regularly for trial on its merits on July 3, 1947, before the court sitting without a jury.

Respondents assign as error the denial of their motion to dismiss the petition and to quash the alternative writ of mandamus for the reason that they assert no justiciable question or controversy was presented, and, hence, no relief could properly be granted; i. e., that the petition failed to show a clear legal right to petitioner and a corresponding duty in law of respondent board to grant a certificate for a barber school. Particularly, objection is made to the fact that the petition does not show a

refusal by respondents to issue the certificate, it being their contention that the petitioner had not exhausted her remedy at law in that she must await a ruling by the Board and then appeal therefrom if it was adverse. They further contend that while the court might in proper circumstances order the Board *to act,* it could not direct them *how to act.*

 These various contentions go to the heart of the questions raised on this appeal, the details of which will be developed as we proceed. While as a matter of law it is true that to justify the issuance of a writ of mandamus a refusal to perform the duty imposed must clearly appear; that refusal need not in all cases be an outright adverse determination. The rule as to what constitutes refusal is succinctly set forth in 38 C.J., Mandamus, section 54, page 580.

"While it must clearly appear that the party withholds compliance and distinctly determines not to do what is required, the refusal may be either express or implied. Any conduct on the part of the officer or tribunal under a duty to perform signifying unequivocal intention not to do so amounts to a refusal. A refusal may be implied from a colorable or unreasonable delay in acting, although a proper and reasonable postponement of action, made in good faith, does not constitute a refusal to act. * * *"

The petition sets forth the matters which are primarily relied upon as justification for the equitable relief of mandamus. It is

affirmatively asserted that the acts of the respondent Board in failing to issue the license were arbitrary, capricious, and deliberately wilful and in this respect deprived petitioner of her right to earn a livelihood, thereby denying her the equal privileges, immunities, and protection of the law as guaranteed by the Federal and State Constitutions. Const.U.S. Amend. 14, Const.Ariz. art. 2, § 4.

We deem it unnecessary to set forth the contents of the petition haec verba; suffice it to say that we have carefully examined this lengthy pleading and believe that it does sufficiently allege a compliance by the petitioner with all of the requirements of law prerequisite to the issuance of the certificate and sufficient to warrant the issuance of an alternative writ of mandamus. There is no merit to this assignment.

It was error, however, for the court to deny respondents' motion to strike many portions of the petition as we agree with their counsel that the petition contains much that is "argumentative, verbose and prolix." The rule, however, is that where as here a matter is being tried to the court, greater latitude is given the trial court in exercising its sound discretion in ruling upon motions to strike, and it is only when the moving party can show that he was greatly prejudiced by a retention of the allegations that an abuse of discretion amounting to reversible error is shown.

MacNeil v. Vance, 48 Ariz. 187, 193, 60 P.2d 1078; 49 C.J., Pleading, sections 1028 and 1029, pages 725, 726. No such showing was here made.

The petitioner by a cross assignment of error attacks the ruling of the trial court denying her motion to strike the answer and other pleadings of the respondents by challenging the right of the County Attorney of Maricopa County and of counsel (Croaff & Croaff) privately employed to appear for the respondents, it being her contention that their purported appearance and active conduct of the case render the entire proceedings, insofar as the Board is concerned, absolutely void, and constitute no appearance. Principal reliance is upon the statute prescribing that:

"The attorney-general shall be the legal advisor of all departments of the state, and shall give such legal service as such departments may require. With the exception of the industrial commission, no official, board, commission, or other agency of the state, other than the attorney-general, shall employ any attorney or make any expenditure or incur any indebtedness for legal services. The attorney-general may, when the business of the state requires, employ assistants." Section 4-503, A.C.A.1939.

The record before us shows that from its inception the respondents have at all times recognized the Attorney General as being in control of the litigation in that his name appears, along with other

counsel, on all pleadings, briefs, etc., and that a representative of that office was present during the trial of the case, at the subsequent hearings, as well as appearing before this court. The County Attorney's staff seek to justify their appearance by the fact that the statute, section 67-120(d, e), A.C.A.1939, makes it their duty to represent the Barber Board on appeals, and state that this was considered by them to be in the nature of an appeal. The prohibition against employment of private counsel, section 4-503, supra, by any board or commission is directed primarily against incurring any public expense for outside counsel; i. e., to protect the treasury against duplication of salaries and to provide a place where all officers could obtain legal advice and services if they so required. State v. Hendrix, 59 Ariz. 184, 124 P.2d 768. There is not the slightest evidence that private counsel procured by respondents are to be compensated from public funds, as indeed they could not be. However, any possible objection to the appearance of the County Attorney and private counsel in this case was overcome when the trial court, in the exercise of its discretion, granted the motion of the Attorney General that they be entered as associate counsel with him in the case. This cross assignment is wholly without merit.

The Barber Code, article 1, chapter 67, A.C.A.1939, lays down certain requirements for the establishment and operation of a barber school: (1) At all times it is to be operated under the personal supervision and management of a registered barber, section 67-102(4); (2) there must be taught therein "the fundamentals, theories, practices and practical applications of barbering" section 67-105(b); (3) as a prerequisite to graduation the school must require a course of instruction of not less than 1000 hours, there must be one instructor for each twelve students, applicants for admission to the school must be more than 16½ years of age, of good moral character and temperate habits, graduates from the eighth grade of grammar school, and be free from any infectious, contagious, or communicable disease, section 67-112; and (4) payment of a fee of $125, section 67-117.

The Board is authorized by statute, 67-131, "to make reasonable rules and regulations for the administration of this article * * * in aid or in furtherance of the provisions of this article * * *." By virtue of this authority on March 22, 1947 (after petitioner had commenced her efforts to procure a certificate), the respondent board adopted some additional requirements for those desiring to establish such a school. Briefly these requirements of an applicant (except insofar as they are duplication of the statutory provisions) are: (5) submission of a curriculum for approval; (6) furnish location of proposed school, also a sketch of rooms to be used, list of

equipment, immediate surroundings as pertaining to sanitation and health; (7) furnish satisfactory proof of financial responsibility of the operator; and finally (8) (Board's rule No. 2) furnish names of proposed instructors who are to be given an examination by the Board to determine their qualifications and capability to fulfill their duties as instructors, those passing to be certificated as instructors.

It was definitely and conclusively established at the trial, even by the admissions of the individual board members, that the petitioner had fully met all of the statutory requirements (numbered 1, 2, 3, and 4, supra) as well as meeting requirements numbered 5, 6, and 7, supra, prescribed by the rules and regulations of the Board. The crux of this whole case is whether the respondents had the right to exact of petitioner compliance with rule 2 (item 8); i. e., that her instructors submit themselves to the Board for examination as to their qualifications to teach in such school. The trial court ruled:

"The Court: Well, the Court is definitely of the opinion that there is no authority for you to examine instructors and no law requiring them to stand an examination. Until the Legislature does make such a law, then the Court cannot write it into it. Neither can the Barber Board."

[9] It was not until the Tenth Legislature that the business of barbering was regulated by the passing of chapter 39, Session Laws 1931, amending the laws on "Professional and Business Pursuits" by addition of article 15. This act contained a proviso, section 3(c), " * * * and no instructor who has not been licensed by the board shall be employed in any (barber) school. * * *" It is significant that with the passage of chapter 51, Session Laws 1935, amending the barber code, this proviso as to instructors was omitted and has not since been adopted as a part of our laws. The Supreme Court of Florida in Mayo v. American Agricultural Chemical Co., 101 Fla. 279, 133 So. 885, lays down a salutary rule. "Omission on final enactment of clause of bill originally introduced is strong evidence that Legislature did not intend omitted matter should be effective; departmental regulation which in effect seeks to enforce matter purposely omitted from statute is unauthorized." Syl. #2, which principle we believe is controlling in the instant case. As the trial court so ably pointed out to the respondents at the trial, if the legislature had intended examinations for instructors, it would have set up some standard by which they could be judged "but you certainly can't go beyond the law itself and amend it so as to give you greater power than it gives you."

We conclude that the record supports the trial court's finding that petitioner had fully complied with all the requirements of the laws of the State of Arizona entitling her to conduct a barber school within the state, and the Board's attempted requirement that instructors be

examined and licensed by them was void and of no force and effect as the rule was beyond the power of the Board to enact.

■■■■■ Predicated upon the finding that all requirements for a certificate to operate a barber school had been met by petitioner, the court decided that "no discretion is left in the Board, and their acts of necessity become exclusively ministerial." As a conclusion of law from this premise the court stated "that a refusal to grant said license would be arbitrary and capricious and wholly without justification and an abuse of any discretion which they may have under the law." We hold that both this finding of fact and conclusion of law are correct and that no error was committed by the issuance of the peremptory writ of mandamus. An answer to all of the arguments advanced by respondents' counsel on this point is contained in the succinct statement by this court in Maricopa County Municipal Water Conservation Dist. No. 1 v. La Prade, 45 Ariz. 61, 40 P.2d 94, 97:

"The general rule of law is that where the performance of an act is a matter of discretion on the part of a public officer, mandamus does not lie to compel him to do the act. Prina v. Board of Supervisors, 16 Ariz. 252, 143 P. 567; 38 C.J. p. 659 and notes. But where as a matter of law he is bound to act in some manner, even though he have discretion as to how he shall act, he can be compelled to act. United States ex rel. Ness v. Fisher, 223 U.S. 683, 32 S.Ct. 356, 56 L.Ed. 610; State v. Hinkle, 120 Wash. 85, 206 P. 942. And if it appear in the proceeding that there is only one legal way he can act on an admitted state of facts, it would seem that he no longer has any discretion, that his duty, although discretionary if the facts are in dispute, becomes ministerial only, and that logically there is no reason why mandamus should not lie to compel him not only to act, but to act in the only manner which the law permits."

■■■■ As to respondent Board's oft repeated contention that the petitioner's application for a certificate was being investigated and considered by them and that until they had taken affirmative action by approving or rejecting the same any suit to compel the Board to act was premature, we submit that the fact of a six weeks' delay (which the trial court held was unreasonable) and the unyielding position of the Board were tantamount to a rejection, and constituted an implied refusal within the meaning of the text statement from 38 C.J., 580, supra. Furthermore any doubt on this point was resolved against the Board by their failure to act between the date of the trial (July 3) and the entry of judgment (July 16) because at the trial they were fully apprised by the court of their duty in the premises, and, in response to an inquiry from the judge, assurance was given that action on the petition would be taken immediately, probably that same day. It is evident that the trial court con-

cluded at the time judgment was finally entered that if petitioner was to be accorded her rights under the law compulsion by the court was necessary.

■ By its rulings on the admission and rejection of evidence the trial court prevented the respondents from going into the question of whether the petitioner had in fact been conducting classes and giving instruction in her barber school without first having obtained a license to operate, it being the respondents' contention that mandamus should be denied if petitioner's conduct had been such as to render it inequitable to grant the writ. Where, as here, it was the dilatory and obstructive tactics of the respondents that prevented an earlier valid operation of the school, it certainly comes with ill grace from them to urge that the petitioner was not coming into a court of equity with clean hands. The Master's injunction delivered in His sermon on the mount, "And why beholdest thou the mote that is in thy brother's eye, but considerest not the beam that is in thine own eye?" Matthew, ch. 7, v. 3, is here apropos. It is readily understandable why the experienced and learned trial judge swept this specious defense aside.

"By the Court: 'Well, now, Mr. Croaff, she is not here charged with violating any law, so let's establish whether she was entitled to a license. If she was entitled to it, then she was entitled to it long before she brought this action.'"

The following rule of law fully answers respondent's contention:

"Where a person complies as far as he can with the requirements of the license law but is unable to procure a license through no fault of his own, as where it is wrongfully refused, it is not unlawful for him to engage, without a license, in an occupation or business which is otherwise lawful. * * *" 53 C.J.S., Licenses, § 59.

See also Fossett v. Rock Island Lumber Co., 76 Kan. 428, 92 P. 833, 14 L.R.A.,N.S., 918; Royall v. State of Virginia, 116 U.S. 572, 6 S.Ct. 510, 29 L.Ed. 735.

The basis of the second appeal is that the court, after the issuance of the peremptory writ of mandamus, committed error in entering an order denying and refusing to grant stay of proceedings and supersedeas thereon pending a disposition of the appeal. Respondents contend that such action by the trial court operated to nullify the lawful authority of the Barber Board and was an attempt by said Superior Court to prevent an effective appeal to this court.

■ The respondents unquestionably had a right of appeal from the order directing the issuance of a peremptory writ of mandamus, section 21-1702, A.C.A.1939, and, being a state agency, no bond would be required of them, section 21-1813. The rule, however, in situations of this kind is that a stay of proceedings pending appeal

is a matter of discretion with the trial court.

"Mandamus.—The judicial decisions in England and in this country, generally, hold expressly that a writ of error does not, of itself, operate as a supersedeas to stay the execution of a peremptory mandamus, nor does an appeal so operate. * * * And if there is no substantial basis for the appeal, a supersedeas may be denied even though the denial thereof will make the appeal futile." 3 Am.Jur., Appeal & Error, section 561, page 207.

See also 4 C.J.S., Appeal and Error, § 635; Pinckney v. Henegan, 2 Strob. 250, 33 S.C.L. 250, 49 Am.Dec. 592; State v. Kotecki, 164 Wis. 69, 159 N.W. 583; State ex rel. Spokane & Eastern Trust Company v. Superior Court, 109 Wash. 634, 187 P. 358, 9 A.L.R. 157.

Furthermore, the respondents assign as error the act of the court in directing a delivery forthwith to petitioner of the certificate to operate a barber school which they had deposited with the clerk in obedience to the mandate of the court, their contention being that this was an illegal assumption of power upon the part of the court, and that the delivery of the license was without authority of law. Respondents rely upon section 21-1811, A.C.A.1939, which insofar as is pertinent reads:

"If the judgment or order appealed from direct the execution *of a conveyance or other instrument,* the execution of the judgment or order can not be stayed by the appeal until the instrument is executed and deposited with the clerk of the superior court, *to abide the judgment of the Supreme Court.* * * *" (Emphasis supplied.)

The word "conveyance" is defined in Black's Law Dictionary, Third Edition, page 431, as follows:

"In the strict legal sense, a transfer of legal title to land. In the popular sense, and as generally used by lawyers, it denotes any transfer of title, legal or equitable."

See also Adams v. Hopkins, 144 Cal. 19, 77 P. 712; Seal of Gold Mining Co. v. Slater, 161 Cal. 621, 120 P. 15. Whereas, the word "license" as here used is defined:

"A permit, granted by the sovereign, generally for a consideration (Smith v. Commonwealth, 175 Ky. 286, 194 S.W. 367, 370), to a person, firm, or corporation to pursue some occupation or to carry on some business subject to regulation under the police power. State ex rel. Guillot v. Central Bank & Trust Co., 143 La. 1053, 79 So. 857, 858." Black's Law Dictionary, 3rd Ed., p. 1110.

Hence, under the ejusdem generis rule

"* * * where general words follow the enumeration of particular classes of persons or things, the general words should be construed as applicable only to persons or things of the same general nature or

class as those enumerated, * * *." 59 C.J. 981. See also White v. Moore, 46 Ariz. 48, 46 P.2d 1077; Russell v. Golden Rule Min. Co., 63 Ariz. 11, 159 P.2d 776. the term "other instrument" used in section 21-1811, supra certainly cannot be held to include a "license" as this latter term is in nowise of the same general nature or class as "conveyance".

The creation by the legislative department of administrative boards, commissions, or agencies to aid in administering the law is the modern trend; however, the people have the right to expect such agencies to fairly and impartially administer the law as enacted by the legislature in such a manner as to avoid any just charge of discrimination, racial or otherwise, or the creation of a monopoly. From a scrutiny of the entire record in this case it appears to us that respondents have failed to keep in mind these basic principles.

The lower court did not commit any prejudicial or reversible error in directing the issuance of a peremptory writ of mandamus, nor was there an abuse of a sound discretion in its directing the Board to issue a certificate to petitioner to operate a barber school or in ordering that said certificate be immediately delivered to the petitioner.

Judgment and orders affirmed.

STANFORD, C. J., and LA PRADE, J., concur.