# Kroger Grocery & Baking Co. v. City of Lancaster et al.

Dec. 13, 1938.

ROBERT F. VAUGHAN and KELLY J. FRANCIS for appellant.
T. J. UNDERWOOD for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

Appellant, Kroger Grocery & Baking Company, sought to enjoin permanently the City of Lancaster and its co-appellees, the police judge and the chief of police from enforcing against appellant an ordinance adopted by the city on September 7, 1936. The ordinance imposed license taxes upon persons, firms and corporations doing business in the city ''by the operation of motor truck or trucks upon and over the streets of said City.'' The case was before us in October, 1936, on the Kroger Company's motion for a temporary injunction to restrain the city from enforcing the ordinance against it. All of the members of the Court considered the case with Judge Ratliff, who issued an order overruling the motion. Upon the return of the case to the circuit court proof was taken, and on August 23, 1937, the trial judge entered a judgment decreeing that appellant's petition be dismissed, and that the ordinance adopted by the City of Lancaster was a valid police measure. The Kroger Company appeals from this judgment.

Appellant urges reversal on the grounds that: (1) Fifth class cities have no power under their charter to enact an ordinance of this type, nor may such power be implied; (2) the powers of cities to license trucks under sections 2739g-80 to 2739g-102, inclusive, of the statutes is confined to trucks *locally operated;* (3) the ordinance violates the statutes because no regulation is provided and because the fees charged are excessive; (4) the fees as applied to appellant's trucks are confiscatory, thereby violating sections 171 and 181 of the Constitution and the 14th Amendment of the Constitution of the

United States, U. S. C. A. Const. Amend. 14; and (5) the ordinance is vague and uncertain with respect to the class of persons upon which the license is imposed, yet it imposes a heavy penalty for its violation.

Since all of the essential parts of this regulatory ordinance have been challenged, we quote it in full below, with the exception of section 6, which provides that the ordinance shall supersede an ordinance adopted by the council on June 1, 1936:

"An Ordinance imposing a license tax upon motor trucks doing business in the City of Lancaster, Kentucky.

"Whereas, the operation of Motor Trucks over the streets of Lancaster, causes considerable damage to said streets, requiring the expenditure of much money in making repairs, and whereas it has become necessary for extra police supervision in the management of motor traffic in the City, the expense of all of which is paid out of the general fund, it therefore, becomes necessary to provide for such increased expenses, Now, therefore, in the exercise of its police power, the City Council of the City of Lancaster, Kentucky, do ordain as follows:

"Section No. 1. On and after the passage and publication of this ordinance according to law, it shall be unlawful for any person, firm or corporation doing business in the City of Lancaster, Kentucky, by the operation of motor truck or trucks upon and over the streets of said City without first having obtained a license tag, or certificate, from the City Clerk and paying a fee for the operation of such truck or trucks as follows, viz: For trucks of a rated capacity of one half ton $10.00 per year; for one ton truck, $15.00 per year; for 1½ ton truck, $25.00 per year; for 2 ton truck and over $50.00 per year.

"Section No. 2. When a trailer is attached to any truck for which a license is required by this ordinance, the ton capacity, or load limit of such trailer shall be added to the ton capacity of said truck for the purpose of classifying said truck in tonnage class.

"License may be issued for a shorter period

than one year, put for not less than six months from the time of application, and all license taken under this, or similar ordinances, shall expire on the date to which they were issued. All money collected under this ordinance shall be paid into and become a part of the general fund of the City.

"Section No. 3. The City Clerk of the City of Lancaster, Kentucky, shall be allowed the sum of fifty cents for the issuing of each license tag, or certificate, same to be charged to, and collected from the applicant for such license, and it is made the duty of the City Clerk and the policemen of the City of Lancaster, under the direction of the Mayor of said City, to enforce this ordinance.

"Section No. 4. Each and every person, firm or corporation operating or responsible for the operation of any such motor truck for which a license is required under this ordinance, as well as the owner of such motor truck, shall be liable for the payment of such license, and for the non-payment of such license, be subject to the penalties provided for in this ordinance.

"Section No. 5. All persons, firms and corporations guilty of the violation of any of the provisions of this ordinance, shall upon conviction be fined in any sum not less than $5.00 nor more than $50.00 for each offense, and each day that this ordinance is violated by any such persons, firm or corporation, shall constitute a separate offense."

In support of its first contention appellant cites section 181 of the Constitution and section 3637-4 of the statutes. It is claimed that under that statute, which is a part of an Act of 1893, fifth class cities are authorized only, "To impose and collect license fees and taxes on stock for breeding purposes, and on all franchises, trades, occupations and professions; * * *." In this connection, however, we find that section 2739g-92 of the statutes, which is part of chapter 106 of the Acts of 1932, provides that cities of the first, second, third, fourth, fifth and sixth classes, are empowered to license motor trucks under certain conditions. This section reads in part as follows:

"(b) If any motor-truck, semi-trailer truck or trailer, shall be licensed by any city or incorporated

town in this State, and the registration plate or plates issued as evidence of said license shall be conspicuously exhibited on said motor-truck, semi-trailer truck or trailer, in the manner required by ordinance, the provisions of Sections Two (K. S. Section 27 ● ● -81), Three (K. S., Section 2739g-82), Four, (K. S., Section 2739g-83), Five (K. S., Section 2739g-84), Six (K. S., Section 2739g-85), Nine (K. S., Section 2739g-88), Ten, (K. S., Section 2739g-89) and Eleven (K. S., Section 2739g-90) hereof shall not apply to the operation of such motor-truck, semi-trailer truck or trailer, within the limits of the city or incorporated town issuing such license, or within ten miles of the limits thereof, if it be a city of the first, second, third or fourth class, or within five miles of the limits thereof, if it be a town of the fifth or sixth class. Provided, that all cities and incorporated towns are hereby empowered to provide, by ordinance, maximum limits with respect to the weight, height, width and length of motor-trucks, semi-trailer trucks and trailers, within their respective boundaries, not less, however, than the maximum limits prescribed in Sections Three (K. S., Section 2739g-82), Four (K. S., Section 2739g-83), Five (K. S., Section 2739g-84) and Six (K. S., Section 2739g-85) hereof, to authorize the operation of trailers, therein, to impose license taxes on motor-trucks, truck-tractors, semi-trailers and trailers, and to require that all vehicles to which licenses may be issued shall affix the registration plate or plates issued as evidence of said licenses to said vehicles in some conspicuous place, to be prescribed by ordinance.''

Chapter 106 of the Acts of 1932, sections 2739g-80 to 2739g-102, inclusive, of the statutes, by its title, relates to the ''further regulation of motor trucks,'' while chapter 104 of the Acts of 1932, sections 2739j-42 to 2739j-97, inclusive, of the statutes, relates to ''regulating and governing the transportation for hire of persons and property by motor vehicles.'' The latter act, insofar as the trucking industry is concerned, regulates contract carriers and common carriers. In the case of City of Pineville v. Meeks, 254 Ky. 167, 71 S. W. (2d) 33, we held that a city has no authority under either chapter 104 or chapter 106 of the Acts of 1932 to place

a license tax upon trucks granted permits under chapter 104.

We have frequently held that section 181 of the Constitution is no bar to a license tax imposed by a municipal corporation under its police power. City of Henderson v. Lockett, 157 Ky. 366, 163 S. W. 199; City of Mayfield v. Carter Hardware Company, 191 Ky. 364, 230 S. W. 298; City of Mayfield v. Carter Hardware Company, 192 Ky. 381, 233 S. W. 789. See also Smith v. Commonwealth, 175 Ky. 286, 194 S. W. 367, for a general discussion of the subject of police power. It is our conclusion, therefore, that a city of the fifth class is authorized under section 2739g-92 of the statutes to regulate the use of and to impose a license on trucks under its police power.

Appellant's second contention deals with section 2739g-92 of the statutes quoted above, as it relates to the operation of motor trucks within the limits of a city of the fifth class or within five miles of the limits thereof. It is contended that this provision, if valid as to fifth class cities, means that such cities may license only those trucks which *operate locally;* and that since appellant's trucks operate on the highways of the commonwealth outside of the city of Lancaster, and beyond five miles of the limits thereof, the statute can not be applied to its trucks. If appellant's contention in this regard should prevail there would be few if any trucks "operated locally," in Lancaster, because the owners thereof would merely have to operate them beyond the five mile limit in order to avoid the imposition of the license. In other words, any truck owner who operated his truck beyond the five mile limit would be justified in making the same contention as appellant that the license did not apply to him because his truck was not operating solely within the limits mentioned in section 2739g-92. Appellant also contends that the application of the reasoning in the Meeks Case, supra, would exempt it from the Lancaster license.

The trial judge ably discussed these two points, among others, in an opinion found in the record. We adopt as a part of our opinion the portion of the opinion of the trial judge applicable to appellant's second contention. This portion of the opinion of the lower court is as follows:

"As to the contention that this ordinance violates the provision of Chapter 104 of the Acts of 1932, and also those of Chapter 106, of the same session:

"Chapter 104 deals with common carriers and contract carriers, as defined in the Act. Plaintiff's trucks belong to neither class. See City of Pineville v Meeks, 254 Ky. 167, 71 S. W. (2d) 33, for discussion of these provisions. So far as concerns this ground of complaint, clearly plaintiff is not in position to utter it. Cumberland Pipe Line Company v. Commonwealth, 228 Ky. 453, 15 S. W. (2d) 280, 285. Chapter 106 provides for regulation of freight motor trucks and trailers. The regulations as to the former concern the weight, height, width, length, speed, brakes, and lights. Those provisions are now found in section 2739g-80 to 2739g-90, inclusive, of Baldwin's 1936 Revision. Section 2739g-92, of that Revision, and a part of Chapter 106, confers power upon cities of each class to impose license taxes upon motor trucks. We have already spoken of that. It also contains provision empowering cities to regulate the dimensions and weight of motor trucks within such city or operating within 10 or 5 miles of its limits, depending upon whether of one of the first four classes, or of the 5th or 6th class. And it provides that as to any motor truck licensed by any city, the statutory regulation as to dimensions and equipment contained in sections 2739g-80 to 2739g-90, shall not apply to them when operating within any such city or within the 10 or 5 mile limit.

"Counsel for plaintiff in brief contend that by reason of such provisions the Legislature granted to cities the power only to license trucks within any city or operating within the 5 or 10 mile limit, and as the plaintiff's trucks operate beyond those limits, the ordinance is invalid as to plaintiff. I do not think that is a proper construction of the legislative grant. As I read section 2739g-92, it was the purpose of the law to give to cities the right to regulate the dimensions and weight of trucks within their limits or when in operation within the limits stated, and when they exercised this power then as to those trucks so regulated by the city, the statutory regu-

lations did not apply within the area stated; but it was not the purpose to impose upon a city, if it desired to license a truck, or trucks, rather, the duty also of regulating its size and weight. That was left within the discretion of the city. In short, the grant to license is not to be restricted by the burden also of regulation of size and weight. This present ordinance shows the wisdom of leaving to the city flexibility, so to speak, of judgment in such matters. It graduates the license tax according to the tonnage of the particular truck. It does not set limits to the size or weight that might operate within the city. The tax thus varying with the capacity of the truck to which it applies, follows a method of fixing license fees long recognized in this state and elsewhere as proper. And I may add that the grant itself is not limited in terms to any such condition. It is unrestricted, and it seems to me to defeat its plain object to annex the limitation invoked by plaintiff.

"It is urged by plaintiff that the ordinance does not apply to its trucks because it is not engaged in the business of operating trucks on the streets of the city. The argument is, that the ordinance should be limited to those engaged strictly in trucking. But I do not think it is that narrow. By its terms it applies to those 'doing business in the city of Lancaster, Kentucky, by the operation of motor truck or trucks upon and over the streets, etc.'

"I do not see how, under the evidence for plaintiff, there can be any reasonable doubt about plaintiff doing business in that city by the operation of its trucks. That evidence shows that the bringing of merchandise by its trucks to its store there is a most important factor in the proper operation of that business. The ordinance certainly applies to those trucks."

We conclude, therefore, that (1) there is no basis for appellant's claim that Chapter 104 of the Acts of 1932, applies to its trucks; (2) the ordinance of the city of Lancaster is valid under section 2739g-92 of the statutes; and (3) the nature of appellant's business in Lancaster is such as to make the ordinance applicable to its trucks.

Appellant's third contention is that the ordinance provides no regulation, and that the license fees are excessive. There is no basis for arguing that the Lancaster license tax does not produce a sum in excess of the actual costs of issuing the licenses, because the preamble to the ordinance itself refers to extra expense for police supervision and damages caused to the streets of Lancaster by the operation of motor trucks. In 1936, the ordinance produced license fees amounting to $1391.92. This amount represented approximately 10% of the city's revenues. We have held, however, in the cases of McGlone v. Womack, 129 Ky. 274, 111 S. W. 688, 33 Ky. Law Rep. 811, 864, 17 L. R. A., N. S., 855; City of Mayfield v. Carter Hardware Company, supra, Smith v. Commonwealth, 175 Ky. 286, 194 S. W. 367; and Blue Coach Lines v. Lewis, 220 Ky. 116, 294 S. W. 1080, that a license tax enacted under the police power is not necessarily defective if it produces funds in excess of those required to exercise such power. The Womack Case dealt with the 1906 dog tax law. The funds realized were to be used for damages done to sheep by dogs; the balance over and above the amount required for this purpose to go to the school fund. The Smith Case dealt with a license tax on motor vehicles issued through the office of the state commissioner of motor vehicles. In that case the excess of motor license fees over and above administrative costs was to be used for the upkeep of the public highways. On this contention, the trial judge said in his opinion:

"I think it clear from the two decisions last cited, (Smith v. Commonwealth and Blue Coach Lines v. Lewis, supra), that the fact the preamble to this ordinance recites that truck traffic over the streets of the town has caused them considerable damage, requiring expenditure of much money for making repairs, by no means reveals a purpose or reason for the enactment beyond the police power. On the contrary, in testing whether the ordinance is really a police measure, and in comparing the cost of administering the ordinance with the amount probably to be realized from the fees imposed, that purpose—repairing the damage that might probably be done the streets resulting from the operation of such trucks—must not be put out of mind. The inquiry, therefore, is not to be directed solely to the

cost of enforcing the ordinance and comparing that cost with the fees to be realized therefrom. There must also be included the inquiry as to whether the excess of fees over such cost is out of proportion to the amount of repairs that must be taken care of, resulting from such damage as may probably be done to the streets, as stated.

"Now, it appears from the evidence of Mr. Bastin, the mayor of Lancaster, that the trucks to which this ordinance applies caused a good deal of damage to those streets; that it was his observation the operators of these vehicles made no allowance for weather conditions, with resultant effect upon the streets, when traffic conditions were unfavorable; for instance, that they hauled as heavy loads in the winter of 1935-36, when the streets were peculiarly liable to damage from heavily loaded vehicles, as at other times; that, under the regulations of the city, on account of the size of the trucks, and to prevent blocking of traffic, they were required when loading or unloading to use alleys or side streets, and on account of this use these streets were damaged. With these conditions before the council, I do not think it can properly be held that because the amount realized in 1936 from the fees imposed, $1391.02, was much in excess of the cost of enforcing the ordinance, therefore, the ordinance must be treated, not as a police measure, but as one strictly for raising revenue. If there was warrant for the council concluding that on account of these trucks using the streets, basing their conclusion upon their experience and observation, damage would probably be done to the streets beyond that incident to general motor traffic over them, certainly the council should not be held to meticulous measurement of the amount of repairs that might probably be required as a result of such truck use. As said by the Court of Appeals in City of Mayfield v. Carter Hardware Company [233 S. W. 790], already cited:

" 'No unreasonableness will be presumed, and where the ordinance is clearly within the general power of a municipality, it is presumed to be reasonable, and the judicial power of the state will not be exercised to declare it void, unless by its inher-

ent character or proof it is shown to be unreasonable. * * * Courts are not compelled to be too exact in determining what is a reasonable license fee.'

"I am therefore, of the opinion that this ordinance is a valid police measure."

In view of the circumstances pertaining to the Lancaster ordinance, as discussed by the trial judge, and the authorities cited on this point, we are constrained to, and do, uphold the decision of the trial judge that the ordinance is a valid police measure.

Since the reasoning of the trial judge relating to appellant's fourth contention (discrimination and confiscation) is consistent with our views in the matter, we are adopting as a part of our opinion the applicable portion of his opinion. On this point the trial judge said:

"Nor is there any basis, as I see it, for the criticism, that the ordinance arbitrarily discriminates against plaintiff, for the reason that plaintiff's trucks do not use the streets as much as other trucks to which it applies. It seems to be conceded by counsel for plaintiff in brief, (page 4), that plaintiff's trucks enter Lancaster on an average daily—one a day. Now the city council certainly have some discretion touching this. It will hardly be contended I think that in order to make the ordinance of this character valid in this respect the council must apportion the charge as to each of such trucks subject to it in exact ratio to its use of the streets. Yet, carried to its logical end, the claim of plaintiff would require the city council to do just this.

"Equally without merit is the objection based upon the fact that the plaintiff has several trucks, about twelve or more, entering Lancaster, and that it is beyond the power of the council to make it pay on each of these trucks, instead of on just one. Where the city has the power to levy such a license it may be based or graded according to the type, size, or horse power of the particular vehicle, or the number of vehicles in use. 37 C. J. page 232, section 86.

"Plaintiff asserts discrimination in administering the ordinance is practiced, citing the copy of

license fees paid under the ordinance, and filed by the city clerk. But the ordinance permits issual of license for 6 months, instead of for the full year, and it can not be presumed that the payments so made were for the full year, instead of just for the six months. If the license in question were taken out for six months, instead of for one year, then the amount paid in each instance follows the provision of the ordinance.

"Plaintiff insists that the ordinance unlawfully discriminates against persons doing business in the city by the use of trucks.

"The test of whether a police measure discriminates in the imposition of license taxes between persons engaged in the same business, trade or occupation similarly situated is the same as under a revenue measure. Commonwealth v. Payne Medicine Company, 138 Ky. 164, 168, 127 S. W. 760. Does this ordinance so offend?

"An excellent exposition of the principle of uniformity in such matters is contained in that case, Judge Carroll speaking for the Court. Upon this, the opinion states (pages 168, 169, 127 S. W. page 762):

" 'In other words, if under this power the Legislature deems it wise to impose a tax upon a specified trade, business, or occupation, such tax must be equal and uniform on all like businesses, trades, and occupations when the circumstances and conditions of each are substantially alike. * * * In short, the doctrine of uniformity as to persons engaged in the same business and similarly situated in respect to taxation applies with as much force to police measures as it does to revenue measures. * * * We have also ruled that it was not necessary to impose a license tax upon all trades, occupations, or professions, but that any one or more trade, occupation, or profession might be singled out for taxation and all the others not thus selected exempted.'

"And where the Legislature has granted the power to a municipality to levy license taxes, the discretion of the city is as far-reaching as when the power is directly exercised by the Legislature itself. Hager v. Walker, etc., 128 Ky. 1, page 9, 107

S. W. 254, 15 L. R. A., N. S., 195, 129 Am. St. Rep. 238. Of course, if the power so granted by the Legislature is restricted by the terms of the grant, the discretion of the municipality is confined within such limits. City of Covington v. Woods, etc., 98 Ky. 344, 33 S. W. 84. But the grant to cities under section 2739g-92 is one to cities to impose license taxes on motor trucks, truck-tractors, semi-trailers, and trailers, and is a general, not a restricted one. As to the vehicles embraced, it is as general as that grant before the court in City of Mayfield v. Carter Hardware Company, 191 Ky. 364, 230 S. W. 298. There the Legislature conferred upon towns of the class of Mayfield the power to tax all kinds of vehicles, and the city selected motor vehicles as the ones subject to be licensed and taxed. The classification was upheld as valid.

"Recurring to uniformity in taxation: In City of Newport v. Merkel, etc., Co., 156 Ky. 580, 585, 161 S. W. 549, 551, the court quotes with approval the following statement from Fort Smith v. Scruggs, 70 Ark. 549, 69 S. W. 679, 58 L. R. A. 921, 91 Am. St. Rep. 100, with regard to the rule of equality in license taxes:

" 'But the rule of equality only requires that the tax shall be collected impartially of all persons in similar circumstances; and this statute applies equally to all persons of the class taxed.'

"Bearing in mind that the doctrine of uniformity applies alike to police and revenue measures, it is pertinent to refer to Williams v. City of Bowling Green, 254 Ky. 11, 70 S. W. (2d) 967. The Court, by Judge Clay, after observing that there is no provision of our Constitution which fixes a different standard from that prescribed under the Equal Protection clause of the Fourteenth Amendment to the Federal Constitution, U. S. C. A. Const. Amend. 14, summarizes from the decisions of the U. S. Supreme Court the principles declared as determinative of whether or not a particular classification offends that Amendment. As there stated, the doctrine generally is this [page 968]:

" 'The restriction imposed by the Fourteenth Amendment does not compel the adoption of an iron

rule of equal taxation, nor prevent a variety or differences in taxation, or discretion in the selection of subjects or the classification for taxation for properties, businesses, callings, or occupations. The fact that a statute discriminates in favor of certain classes does not make it arbitrary, if the discrimination is founded upon a reasonable distinction, or if any state of facts reasonably can be conceived to sustain it.'

"In Rast v. Van Deman, etc., Co., 240 U. S. 342, 36 S. Ct. 370, 60 L. Ed. 679, L. R. A. 1917A, 421, Ann. Cas. 1917B, 455, the court said with respect to unlawful discrimination under that Amendment [page 374]:

" 'It is established that a distinction in legislation is not arbitrary, if any state of facts reasonably can be conceived that would sustain it, and the existence of that state of facts at the time the law was enacted must be assumed. [Citing case.] It makes no difference that the facts may be disputed or their effect opposed by argument and opinion of serious strength. *It is not within the competency of the courts to arbitrate in such contrariety.*' (My emphasis.)

"The present ordinance applies to all who do business in the city by the operation of motor trucks. The incidence of the tax depends upon whether the particular truck falls within that classification. There is no discrimination against or in favor of any operating trucks in pursuit of their business. It is unlike City of Louisville v. Weikel, etc., 137 Ky. 784, 127 S. W. 147, 128 S. W. 587, cited by plaintiff. The ordinance there held invalid undertook to tax milk dealers using a vehicle in connection with their business. It was a revenue measure. Other milk dealers, not using any vehicle in their business, were exempted. And it was struck down because ' it is not competent for it to tax some members of a class set apart by the Legislature and not tax others of the same class.' Page 788, 127 S. W. page 148. And the present ordinance is, upon the governing principle, clearly distinguishable from that held void in City of Covington v. Dalheim, etc., 126 Ky. 26, 102 S. W. 829, 31 Ky. Law

Rep. 466, upon which plaintiff relies. There the ordinance purported to apply to all grocers in the city, but the license was exacted only from grocers using vehicles in their business. It was held that if the class selected for taxation was that of grocers, all must be taxed. In both of these cases, then, the city council adopted a classification for taxation, but did not make the tax apply to all of the class. And in the last case it is proper to observe that the court said while the manifest purpose of the ordinance was to tax, not grocers, but delivery wagons used by them, the ordinance could not be sustained upon that ground, for the reason that under the charter of cities of that class only vehicles used for hire could be so taxed, and the vehicles involved were not those for hire. The grant to cities under section 2739g-92 is not so limited, as has been seen.

"If a distinction is not arbitrary 'if any state of facts reasonably can be conceived that would sustain it, and the existence of that state of facts at the time the law was enacted must be assumed,' I do not think the court is warranted in concluding that the city council acted arbitrarily in selecting as a distinctive class for taxation those doing business in Lancaster by the operation of motor trucks upon the streets. I am, therefore, of opinion the ordinance is valid, as a police measure."

Lastly, we have noted that appellant contends that the ordinance is "vague and uncertain." It is urged that the following portion of section 1 of the ordinance does not make it clear as to the class subjected to the license tax:

"It shall be unlawful for any person, firm or corporation doing business in the City of Lancaster, Kentucky, by the operation of motor truck or trucks upon and over the streets of said City without first having obtained a license tag, or certificate, from the City Clerk and paying a fee for the operation of such truck or trucks." * * *

We cannot agree with this contention. The portion of the ordinance just quoted shows clearly that the class subjected to the license is that which is doing business in Lancaster by the operation of motor truck or trucks upon and over the city's streets. We have already seen

that appellant's trucks come within this class, and that the license tax is applicable to them. Furthermore, it does not appear that discrimination has been practiced in administering the ordinance. Appellant urges that a statute imposing a penalty must be "direct, specific and certain, especially so where a tax is exacted." Be this as it may, the ordinance in question substantially meets these requirements as we have heretofore noted.

We are constrained to hold, therefore, for the reasons set forth above that the judgment of the lower court should be and it is affirmed.