BENN BRODKEY, Appellant, v. CITY OF SIOUX CITY et al., Appellees; LOUIS M. MURRAY et al., Intervenors, Appellants; ASSOCIATED RETAILERS OF SIOUX CITY et al., Intervenors, Appellees.

No. 44806.

1292

April 2, 1940.

Supplemental Opinion on Petition for Rehearing and Rehearing Denied February 18, 1941.

Lester C. Davidson, Fred H. Free, and Robert J. O'Connor, for appellants.

Milchrist & Marshall, Shull & Stilwill, Kindig, Faville & Mathews, Lowell C. Kindig, Ralph Crary, Virgil DeWitt, H. N. Slotsky, and Abe A. Sekt, for appellees.

Richards, J.—While that which will be related was transpiring the plaintiff was a resident of defendant city and a taxpayer therein. He had acquired a leasehold that comprised a portion of a business building fronting upon a street within the Sioux City "parking meter zones". From that street there was an entrance that afforded the sole means of access to plaintiff's premises. He there was engaged in the blending, grinding and packing of coffee. For delivering the coffee from the premises to purchasing customers he used his duly licensed motor vehicle. The business places where deliveries were made to about 25 of these customers were likewise within the "parking meter zones". Plaintiff's petition was filed on July 19, 1938. Therein a series of ordinances of defendant city and 2 contracts it had entered into for the purchase of 700 parking meters were set out, followed by allegations that pursuant thereto the city was about to install parking meters in the district where plaintiff and his customers had *their* places of business, to the damage of plaintiff and others similarly situated. Alleging that the ordinances and contracts were illegal, unconstitutional and void, plaintiff prayed they be adjudged so to be, and that specific as well as general relief in restraint of defendants proceeding thereunder be granted. An amendment was filed on August 19, 1938, wherein were averments that the contemplated installing of parking meters had been carried

out. Some additional matters were pleaded. Defendants answered, and various petitions in intervention were filed. After hearing the cause, the court dismissed the petition on the merits and entered judgment against plaintiff. Therefrom he has appealed.

The ordinances, passed during the months of September 1937, and May, June and July 1938, purported to establish ''parking meter zones'' adjacent to the sidewalk curbs on both sides of certain streets, and provided that in and upon such zones ''the Superintendent of Public Safety shall cause to be located and established not to exceed seven hundred parking meters at such locations in said zones as he may designate'' and that he should remove them to new locations, as traffic conditions require. The ordinances directed that the superintendent of public safety enter into a contract, after approval by the city council, for the purchase, ''and/or'' installation and operation and maintenance of parking meters. Further provisions were that each meter be placed upon the curb adjacent to an individual parking space 20 feet in length, and that each meter indicate ''by a proper signal the legal parking time established by the city,'' and also indicate, when operated, the duration of the period of legal parking and illegal overparking at the expiration of such period. Several duties were imposed upon an operator parking a vehicle in one of these spaces. With respect to each such requirement a failure to comply by the operator was made a public offense. The area of the zones was such that there were therein approximately 1,800 spaces, each 20 feet in length.

Plaintiff makes the statement that, though the parking of a vehicle in a space where there is no meter would constitute no public offense ''today'' the superintendent makes it an offense ''tomorrow'' by placing there a meter. Plaintiff also points out that the record shows that the superintendent in fact exercises all the authority the ordinances purport to confer on him. It is the theory of plaintiff that in this granting of powers to the superintendent the city delegated to that official the council's legislative functions, and that therefore the ordinances are violative of Article III of the Constitution of Iowa, which reads:

"Article III
"Of the Distribution of Powers

"Departments of government. Section 1. The powers of the government of Iowa shall be divided into three separate departments—the Legislative, the Executive, and the Judicial: and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any function appertaining to either of the others, except in cases hereinafter expressly directed or permitted."

A setting apart of approximately 1,800 spaces for meter-controlled parking clearly appears. Not to exceed 700 spaces were to be so used. This limitation was numerical. That is, no identification by the city council of the particular spaces not exceeding 700 was attempted. Authority to designate those spaces and to subsequently vary such designation was conferred on the superintendent, to be exercised at his discretion. It is of this the plaintiff complains.

It may be conceded there was delegated a measure of authority. The city council itself could have attempted to point out the particular spaces. It afterwards might have re-designated them. But from that concession the soundness of plaintiff's proposition would not necessarily follow. For, consistently with the holding in this as well as other jurisdictions, the issue deemed raised by plaintiff's proposition is whether, on account of the nature of the authority delegated or by reason of the manner in which it was delegated, the legislative body transgressed the constitutional inhibition. State v. Van Trump, 224 Iowa 504, 275 N. W. 569. In the cited case as well as in Goodlove v. Logan, 217 Iowa 98, 251 N. W. 39, and State v. Manning, 220 Iowa 525, 259 N. W. 213, we have recently reviewed numerous pertinent authorities, and have noted certain generally adopted concepts relative to judicial attitude and viewpoint when, in a given case, a court has for decision the constitutional question now before us. One thought running through the cases is this—the function of a lawmaking body is the establishment of principles or standards of conduct, and may not be delegated; but the application of those principles or standards to

the facts as they arise and the determination whether or not those facts exist, being a function of administrative government, may be delegated to an administrative body. In Field v. Clark, 143 U. S. 649, 694, 12 S. Ct. 495, 505, 36 L. Ed. 294, this is stated in these words:

" 'The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend.' "

Constitutional provisions such as the one here involved are not regarded as denying lawmaking bodies resources that afford flexibility and practicality necessary to effective functioning of the laws they enact. Panama Refining Co. v. Ryan, 293 U. S. 388, 55 S. Ct. 241, 79 L. Ed. 446. And courts are prone to give consideration to a showing that the authority delegated is to do things the lawmaking body could not understandingly or advantageously do itself. State v. Manning, 220 Iowa 525, 259 N. W. 213.

As in the case last cited, a situation existed in the case at bar that seemingly called for an administrative agency. It may be that in the cited case the need was more imperative. But it fairly appears in the case before us that flexibility of functioning of the ordinances to the end that they apply advantageously to factual situations as they should arise or change was a proper legislative objective if it could be attained lawfully. This is on account of the nature of the subject matter the ordinances affected. For several years a traffic problem had existed in Sioux City. It had varying aspects. A congestion at times of vehicular traffic was a paramount factor. The testimony is that these ordinances were looked upon by the city council as a remedy. The probability is that the city council could not as understandingly and advantageously meet each newly arising or later changing condition as could an efficient administrative officer. It is common knowledge that municipal traffic problems are being increasingly transferred for solution to a more or less developed sphere of expert investigation and deduction. From these considerations it appears that use of an administrative agency for determining the

facts or state of things upon which the ordinances evidently intended to make their action depend, was not inherently unwarranted. Nor are we persuaded that the manner of the delegating of this authority was amenable to attack on the constitutional grounds advanced. The objection that unguided authority and discretion was delegated finds answer in the ordinances. The superintendent was directed to make designation of meter-controlled spaces "as traffic conditions require". We think this afforded a guide for exercising his authority and that it was sufficient, in that it defined as nearly as could be the field wherein exercise of his discretion was deemed appropriate.

It is to the proposition that the superintendent's authority was legislative in character that plaintiff's argument is more particularly directed. His statement concretely illustrating his contention has been noted. As plaintiff says, it would not constitute an offense "today" to park where "tomorrow" the parking would be an offense in event the superintendent meantime installs there a parking meter. But with the proposition that such installing of a meter at that particular place would be the performing of a legislative function within the constitutional intendments we are not in accord. For it was the city council that had established the principles and standards of conduct required of the supposed motorist "tomorrow" as well as "today". The council had established the suppositious space as one where such conduct was to be required. The suspending or nonapplication of the rule of conduct at that space so long as the administrative agency exercised a discretion to use other spaces does not detract from the soundness of defendants' proposition that the legislative source and creator of the duty of the motorist was the city council. State v. Manning, 220 Iowa 525, 259 N. W. 213. The facts and traffic conditions under which the principle and standard of such conduct should, when the proper time arrived, then be observed at a particular space, could, in our opinion, properly be left for determination by the superintendent as a matter of administration of the ordinances. In light of the general concepts to which we have made reference, that determining by the superintendent would not be deemed to be of such purely legislative character as would warrant a finding of unconstitutional-

ity. The ordinances have not been shown to be violative of Article III of the constitution.

In attacking the constitutionality of these ordinances plaintiff has not presented for decision the question whether the state has conferred upon municipalities its police power to interfere with the primary purpose and use of streets for unobstructed public travel. Defendants cite sections 4992 and 4997, Code, 1935. And it is true that in the latter section the power to authorize parking of vehicles upon streets and alleys was granted to cities and towns. But this section and section 4992 appear to have been repealed by chapter 134 of the Acts of the Forty-seventh General Assembly prior to the passage of these ordinances. Section 267 of same chapter 134 is also cited by defendants, without any question being raised by plaintiff whether it amounts to a delegation of afore-mentioned police power. This situation disposes of plaintiff's contention that the parking meters were nuisances unlawfully obstructing use of the streets. Delegation to defendant city of such police power being not questioned anywhere in the case, the city's authority thereunder to interfere with public travel, to the extent that the meters were obstructions, seems self-evident.

██ Whether excessive penalties were provided is not justiciable in this action, in that, with respect to penalties, the ordinances are not shown to have been prejudicial in their effect upon plaintiff upon whom none have been imposed. State v. Dowling, 204 Iowa 977, 216 N. W. 271. The claims that the manner of passage of the ordinances was illegal, and the ordinances void because unreasonable, in our opinion have not been established and upon those points a discussion of the facts would unprofitably prolong the opinion. The same is also true as to the claim that the ordinances were illegal because the city council did not obtain the recommendation of the city planning commission pursuant to chapter 294-A1, Code, 1935. The ordinances pertained to a subject matter unrelated to the provisions and purposes of chapter 294-A1 just cited. The record shows that the discriminatory manner of enforcement, complained of by plaintiff, had been abandoned and its resumption was not intended by defendants. The record is such that we think it was within the

court's discretion to enter no restraining order on that phase of the case.

We advert to the afore-mentioned contracts. They were entered into by defendant city on July 8, 1938, the one with the Mark Time Sales Company, the other with Graybar Electric Company, defendants, hereinafter termed vendors. In each contract the vendor agreed to sell and the city agreed to purchase, under the terms and conditions of the contract, 350 parking meters for the price of $55 per meter installed, plus any taxes on the meters vendor, while owner, might be required to pay. The city agreed that immediately upon installation it would place the meters in operation, and that for a period of at least 6 months it would continue such operation by strictly enforcing all regulations covered by the ordinances and resolutions the city had passed. If dissatisfied the city at the end of 6 months could terminate the contracts. The following provisions were in both contracts. A bank was appointed "as joint agent for both parties hereto for the purpose of receiving, holding, and disbursing all funds received from the operation of the said parking meters". Weekly, or oftener, all coins were to be taken out of the meters and deposited in full with the joint agent. All revenues from the meters constituted a separate and distinct fund, separate and apart from the general funds of the city, and the city had no rights therein except as from time to time it acquired 25 percent thereof when distributed by the bank. This distribution, after deduction of its own compensation, the bank was to make semi-monthly, the proration being 75 percent to vendors and 25 percent to the city, until vendor for the meters and the bank for its services should be fully paid. The title to the meters remained in vendors until payment of the full purchase price from distributions made by the joint agent. Vendors waived all claim and rights against any general revenue or income of the city except the revenues derived from the parking meters. Another provision was that there was no obligation on part of the city to pay vendors any sums out of any other revenues than that derived from the meters except as provided strictly in the contract. Vendor reserved the right to take possession of and remove the meters in event a failure or refusal of the city to enforce the

ordinances and resolution that approved the contracts, or a failure on part of the city in any other of its agreed undertakings, should continue for 5 days after a written notice specifying such breach has been delivered to the city, in which event the city waived all claims on the meters and to the 75 percent of the revenues distributed to vendors.

 The ordinances directed the superintendent of public safety to enter into a contract for the purchase and installation of parking meters, "the payment for such meters and/or installation to be provided for solely from the receipts, funds and revenues obtained from the operation of said parking meters, without in any manner obligating the city to pay for the same from any other source." Closely intertwined with the ordinances are the contracts of purchase shortly thereafter made and which appear to have been then partly negotiated. Without detailed discussion it may be said the record clearly shows that the specific intent and purpose of the foregoing quoted provision was the procuring of the meters by the form of contract shortly thereafter executed. Edwards & Browne Coal Co. v. Sioux City, 213 Iowa 1027, 1045, 240 N. W. 711, 718.

The meters were instrumentalities which the city might properly have proceeded to procure. But in order to accomplish this, the city, necessarily expending its funds in order to purchase meters, was obliged to observe the limitations upon the making of expenditures by cities and towns that the legislature has imposed and made mandatory. The city was required to make advance estimates of annual expenditures. Public hearings thereon were required, after giving of notice of the time and place. There was supervisory control by the state appeal board. Subdivision 16 of section 5663, Code of 1935, in specific terms made it unlawful for the city to issue any warrant or enter into any contract or appropriate any money during any fiscal year in excess of the appropriation previously made for that year. Though the city council should have followed this prescribed and lawful procedure, with observance of all statutes in the expending of funds for meters, nothing of that nature was attempted. Instead the city embarked on an unchartered course, assuming to exercise powers nowhere in the statute expressly

conferred, nor implied therein, nor essential to the purposes of any statute that confers powers on cities. The untrammeled power that the city assumed, to raise and disburse funds solely by reason of authority it conjured out of its own enactments, was in derogation of all the limitations and safeguards the legislature has with such care provided to avoid abuses, even in case of an unquestionably authorized expending of funds by a municipality. Complete evasion of these limitations has been accomplished by the city, were we to hold the course it pursued was lawful and authorized. The revenue produced was not the city's funds. It was not in the city's control or possession. No city official was accountable for its disbursement or dissipation. Others were hired and paid for performing duties that were official in character. We have affirmed the rule that the pledging by a city of revenue is unauthorized in absence of express statutory authority. Van Eaton v. Town of Sidney, 211 Iowa 986, 231 N. W. 475, 71 A. L. R. 820. Subsequently to that case the Forty-fourth General Assembly enacted the Simmer law, Code, 1935, section 6134-d1 et seq., authorizing cities and towns to pledge earnings from certain types of utility plants. But excepting where the Simmer law applies, our attention has been called to no instance in which this court has upheld a pledging of income by cities or towns. But in the instant case there was more than a mere pledge. The control, possession, and disbursement and the property in the revenues the ordinance was being made to produce, were completely surrendered.

In the light of these facts, the trial court should have held that the city was imposing charges for parking vehicles and disposing of the revenue therefrom without lawful authority. Injunctive relief appropriately restraining the defendants should have been decreed. The judgment and decree of the trial court is reversed, and the cause remanded.—Reversed and remanded.

HAMILTON, C. J., and HALE, BLISS, MITCHELL, MILLER, and SAGER, JJ., concur.

SUPPLEMENTAL OPINION ON PETITION FOR REHEARING.

PER CURIAM.—Further consideration of this case on petition for rehearing demonstrates that the original decision herein is based in part upon the holding that the ordinances are unauthorized revenue producing acts and may have overlooked various expenses which should have been included in the cost of regulation and supervision connected with the ordinances. We now are of the opinion that it is unnecessary to determine the question whether the ordinances were illegal as revenue producing measures. We have concluded to withdraw that part of the opinion and leave the determination of such question for future decision should occasion arise.

Accordingly, the last two paragraphs of the opinion, filed herein April 2, 1940 (published at pages 175 and 176 of 291 N. W.), are withdrawn. [The last two paragraphs of the foregoing opinion are substitutes for those paragraphs withdrawn.]

With the opinion so modified, the petition for rehearing is overruled.