# City of Louisville et al. v. Louisville Automobile Club, Inc., et al.

March 27, 1942.

242

Hal O. Williams, Cornelius W. Grafton and Lawrence S. Poston for appellants.

Stanley B. Mayer and James P. Miller for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming in part and reversing in part.

Suit below was instituted to test the validity of an ordinance of the city providing for establishment of parking meters, and of a purchase contract. The city and proper officers were made defendants, plaintiffs being the Louisville Automobile Club, Robert Ball, a citi-

zen, and conducting a business on Fourth Street; N. B. Wigginton, operating a parking lot adjacent within one area, and Eugene Stewart, car owner and citizen.

The proceeding in form provided by Section 639a—1 et seq., Civil Code of Practice, sought a declaration of rights. The court held the contract invalid, and from this ruling defendants appeal, but held the ordinance valid; from this ruling plaintiffs cross appeal.

The ordinance recited that traffic conditions were such as require the use of parking meters in certain areas; the enforcement of parking laws through means at hand difficult, expensive and inadequate, making it advisable to adopt some plan to assist in enforcement. It was contended that the ordinance is invalid, because:

(1)   The erection of meters creates a nuisance; they will permanently obstruct flow of traffic and interfere with movement to and from places of business and residences abutting on streets; interfere with pedestrian traffic over sidewalks upon which meters are installed, thus constituting a taking of plaintiffs' rights in violation of constitutional inhibitions.

(2)   Their maintenance has no proper relation to the regulation of parking, but the ordinance constitutes an attempt on the part of the city to rent parking spaces to automobile owners for obtaining revenue; nor has it any relation to the safety, health, regulation of traffic, prevention of crime, or any other purpose properly classified as a "police power," and that the city will derive a substantial amount in excess of sums necessary to their cost, maintenance and regulation, such excess to be "used by the city for other and general purposes," thus constituting a revenue measure.

(3)   The ordinance discriminates against plaintiffs, particularly those owning property, engaged in business or residing in the affected area, and in favor of those of the same class not within the zone.

(4)   There was, and is in effect a "parking ordinance" which provides for the parking of motor vehicles within the area, which is not changed by the instant ordinance, except that a fee is charged in the new zone, whereas no fee is charged for parking on streets without the zone, this working a discrimination.

(5)   The use of the street for installation of meters

is an "unauthorized abandonment of the deed of dedication of said land for use as a public street."

(6) Under the terms of the ordinance (Section 13) any owner parking within the zone for a longer period than provided may pay one dollar to the Traffic Bureau of the Police Department in satisfaction of the offense of overtime parking, thus relieving the person overparking from subjection to an overtime parking ordinance which provides a fine of from one to five dollars for each offense, discriminating in favor of such owners as park within the zones as against those who park elsewhere, constituting an attempt to circumvent the possible activities of the city's ordinance court, and to substitute therefor the activity of the Traffic Bureau.

It is contended that the contract is invalid since being for the purchase of material in excess of the amount fixed by ordinance requiring competitive bidding, no such bidding was had. Kentucky Statutes, Sections 2824-2829; City Ordinances, Ord. No. 52.

It is explained in briefs that parking meters are manufactured by several companies, and operate in various ways, but insofar as mechanics are concerned the basic principle is practically the same. On such streets as are selected for their use, spaces wide enough to accommodate a car are marked next to the curb. Opposite each space there is set in the curb a metal post, about 2 inches in diameter, 3½ or 4 feet in height, having attached to it a clock-like instrument set in operation when the motorist drops in a coin, and indicating the prescribed parking time limit. An officer notes overtime and tickets the car.

Proof was heard only upon the validity of the contract (a self-liquidating set-up) and upon submission the court in a comprehensive opinion declared the rights of the parties, to be: (a) By statute the city is vested with all reasonable police power, including the regulation of parking vehicles on the streets; under that power it has the right to provide means to assist in enforcing reasonable regulations. Counsel for appellees do not seriously challenge this declaration, and it seems necessary for us to make reference only to Kentucky Statutes, Sections 2742-2825, 2783; Com. v. Nolan, 189 Ky. 34, 224 S. W. 506, 11 A. L. R. 202; Nourse v. City of Russellville, 257 Ky. 525, 78 S. W. (2d) 761; City of Ashland v. Ashland

Supply Co., 225 Ky. 123, 7 S. W. (2d) 833; Mansbach Scrap Iron Co. v. City of Ashland, 235 Ky. 265, 30 S. W. (2d) 968, and parking meter cases, infra.

(b) The fee charged for the privilege of parking is for the purpose of defraying the cost of acquiring, installing, maintaining and supervising the meters, is a valid and reasonable charge, and if these fees exceed the cost and incidental expenses, excess will be used and applied for valid purposes within the doctrine approved in the cases of Blue Coach Lines v. Lewis, 220 Ky. 116, 294 S. W. 1080; Smith v. Com., 175 Ky. 286, 194 S. W. 367; McGlone v. Womack, 129 Ky. 274, 111 S. W. 688, 17 L. R. A., N. S., 855; Kroger Grocery & Baking Co. v. City of Lancaster, 276 Ky. 585, 124 S. W. (2d) 745.

As we read the ordinance, it provides for application of the proceeds from fees to the purposes named above, and for no other purposes, save "for the regulation and control of traffic and the streets of the city," which may be construed to include pay of traffic officers, whose duties in regard to the supervision of the meters are defined in the ordinance.

However, counsel for appellees insist that their undenied allegation that the "excess" will be so substantial "as to take said operation outside of a police regulation, and therefore it is a revenue raising measure," requires us to reverse and give them opportunity to produce proof on this question. The suit was filed in April, 1939; issue was raised by demurrer in June, 1939. Proof was heard on the validity of the contract in July, 1941, and judgment rendered in September.

We note from a stipulation that "demurrers to each of the first fourteen paragraphs of the petition having been sustained, and exceptions reserved, with respect to each of said rulings, the plaintiffs now decline to plead further with respect to the matters set forth in the first fourteen paragraphs of the petition, and agree that the court may enter judgment declaring the rights of parties in connection therewith." Furthermore, if it should develop that proceeds from the fees collected for use of the meters be so excessive as to actually constitute "revenue" as the word is applied, the court would have the power to require a reduction so as to remove the objectionable feature.

In the case of Ex parte Duncan, 179 Okl. 355, 65 P.

(2d) 1015, 1017, where the same contention was made, the court remarked:

"If the city has the power to regulate parking, it has the power to exact a fee of sufficient amount to cover the expenses of maintaining the regulation. * * * 'The courts will not seek to avoid an ordinance by nice calculations of the expense of enforcing police regulations, but will promptly arrest any clear abuse of the power.'" Citing State ex rel. Harkow v. McCarthy, 126 Fla. 433, 171 So. 314. See Hendricks v. City of Minneapolis, 207 Minn. 151, 290 N. W. 428.

(c) The chancellor found the ordinance not to constitute a nuisance or an obstruction, interfering with the use of the sidewalks, or streets by those whose business places abutted the streets in the named zones, since in the latter case it made reasonable provision for proper loading zones for the purpose of conducting business. As to the obstruction of sidewalks, as we observe the description of the proposed contrivances, it could hardly be classed as a nuisance, or unreasonable obstruction. To do so would be to condemn fire hydrants, mail and waste boxes, telephone and light poles, all of which, as do the parking meters, when properly placed, serve some function; some governmental purpose, all necessary to promote the safety of the public, permissible even though some persons may suffer inconvenience by reason of their presence.

There is no discrimination against plaintiffs, or others, who own property, business or residential, in favor of those who own property or conduct business, or reside outside the areas, as we construe the ordinance. This is not forcefully argued, but in a general way this contention is decided adversely in cases where the same question was raised.

Without taking space to quote from the cases, we find the contention, supra, to have been discussed at length in Allen & Reed, Inc., v. Presbrey et al., 50 R. I. 53, 144 A. 888, 890, which held that the city authorities, and not the courts are vested with power to control traffic and holding valid an ordinance similar to the one here, said:

"Although complainant does not have so easy and free access on all sides of its property as it had

in years gone by, it still has reasonable and proper access; the diminution of access is made necessary by the growth of the city; the rights of the public in the highway now require some curtailment of the unlimited rights of access of the abutting owner."

See also on the same point Village of Wonewoc v. Taubert, 203 Wis. 73, 233 N. W. 755. 757, 72 A. L. R. 224, in which the court said:

"For one to claim that he has the right, as an incident of public travel and as an incident of the free use of a street, to stop his car for such length of time as suits his own pleasure or convenience in a no parking area is so unreasonable as to merit no serious consideration."

We fail to see where the establishment of parking meters, at places designated, assuming that vehicles may be allowed to park (where limited as to hours), can make any great difference as far as obstruction or use of the abutting space is concerned. On the point discussed counsel for appellants have not afforded us any authorities sustaining their position, except the case of City of Birmingham v. Hood-McPherson Realty Co., 233 Ala. 352, 172 So. 114, 115, 123, 108 A. L. R. 1140, which we observe is in the small minority of parking meter cases; in dealing with the rights of abutting property owners, it has not been followed to any extent. When we read that case carefully it is not so much in conflict with others on the same point; it held:

"The owner has the right to come and go, and park his vehicle alongside of his property (within reasonable limitations), without the exaction or payment of a tax or fee to the municipality, or to have his property defaced by superimposed obstructions, barriers, or parking meters placed alongside."

Few other cases, as far as we have been able to observe, have held ordinances similar to the one here invalid, and these perhaps in the main turning on points not common here, for example, Rhodes Inc., v. City of Raleigh, 217 N. C. 627, 9 S. E. (2d) 389, and Monsour v. City of Shreveport, 194 La. 625, 194 So. 569, the reasoning and conclusions of which we are not inclined to follow.

(d) The court held the ordinance not to be discriminatory because persons parking in other areas will not

have to pay a fee for the privilege of parking. We fail to follow the reasoning of appellees, which is only evidenced by the statement in the pleading, since the point is not argued in briefs, and no authorities are cited by appellees. Generally speaking, municipal regulations to be valid do not necessarily have to operate on all alike, provided they operate equally on all of a class embraced within their provisions. Com. v. Kentucky Jockey Club, 238 Ky. 739, 38 S. W. (2d) 987; Linton v. Fulton B. & L. Ass'n, 262 Ky. 198, 90 S. W. (2d) 22.

(e) The court found that the installation of meters, in the manner authorized, did not constitute an abandonment of any grant under which the city acquired the streets, or for which the property was originally dedicated. There was no showing which would authorize the court to hold that there was any limitation upon the use of the streets. This contention is not discussed at length on appeal. Appellants suggest that this was perhaps merely an assertion in an attempt to bring this point within the ruling of the Alabama court in the Hood-McPherson case, supra, which upheld a similar contention upon exhibition of certain restrictive deeds, but again that opinion fails of support in this respect by other courts where the question was raised. Harper v. City of Wichita Falls, Tex. Civ. App., 105 S. W. (2d) 743, and Owens v. Owens, Mayor, 193 S. C. 260, 8 S. E. (2d) 339, 343, in which referring to the Alabama case, the court said:

"The decision seems to be based largely on the restrictions in the deed of dedication of the streets, rather than on general principles."

(f) The court held that although Section 13 of the ordinance provided that persons violating it could satisfy the traffic court by payment of $1, provided payment be made within twenty-four hours after notice, it was not invalid. Counsel for appellees argue rather strenuously (without citing authorities) that since one parking on the street, not within the meter zone, is liable to be subjected to a fine of from one to five dollars for overparking, there is discrimination in favor of the one parking by the meter. We see no reason why the city may not put those who pay for parking privilege in one class as against the class which has free use, if there be such. That the classification is not unreasonable is shown by a cursory examination of the city's traffic ordinances,

much too lengthy to be fully recited, but which manifest grounds for a distinctive classification. For example,. violations of ordinances against parking at any time in prohibited places, near fire hydrants, fire and police stations, hospitals or near intersections or cross-paths, all deemed hazardous, or interfering with the prompt exercise of governmental functions, differ from meter parking.

Another classification is contained in provisions of the ordinance restricting the parking of cars for a limited period, one or two hours in designated locations, where no hazard is created by the parking. In these locations parking is limited by the instant ordinance, as to time by the use of meters, in zones 1 and 2, or others later created. Outside of these there are no restrictions, so it is to be noted that there will be no violation except by those who occupy hazardous spots, or meter spaces.

The question (in general) while perhaps modern,. has been before courts on substantially similar contentions. The majority opinions uphold validity. To those which we have referred to above we may add: Ex parte Harrison, 135 Tex. Cr. R. 611, 122 S. W. (2d) 314; In re Opinion of Justices, 297 Mass. 559, 8 N. E. (2d) 179; Gilsey Buildings, Inc., v. Incorporated Village of Great Neck Plaza, 170 Misc. 945, 11 N. Y. S. (2d) 694; Clark v. City of New Castle, 32 Pa. Dist. & Co. R. 371; Kimmel v. City of Spokane, 7 Wash. (2d) 372, 109 P. (2d) 1069; Webster County Court v. Roman, 121 W. Va. 381, 3 S. E. (2d) 631; City of Columbus v. Ward, 65 Ohio App. 522, 31 N. E. (2d) 142; Steiner v. City of New Orleans, 173 La. 275, 136 So. 596. Cases holding to the contrary, in addition to those cited supra, are Brodkey v. Sioux City, 229 Iowa 1291, 291 N. W. 171, 296 N. W. 352; In re Opinion to House of Representatives, 62 R. I. 347, 5 A. (2d) 455; City of Birmingham v. Odum, Bowers & White, 233 Ala. 374, 172 So. 124, some of which were decided on grounds not common here.

A reading of all these convince us that the majority opinions are sounder, and in most of them the conclusions reached are applicable, hence we choose to follow them, in the absence of any to the contrary of convincing effect, and to hold that the chancellor correctly declared the rights of the parties, insofar as the validity of the ordinance is concerned, and which we conclude violates

no provision of State or Federal Constitutions. Ashland Transfer Co. v. State Tax Comm., 247 Ky. 144, 56 S. W. (2d) 691, 87 A. L. R. 534.

On defendants' appeal we find that the contract was attacked because of a lack of bidding, as it was claimed is provided specifically by the ordinance above named, and generally as provided by the city charter citations, supra. Before we conclude on this subject, we must say that we have been unable to reconcile the pleading, proof and exhibits. It appears that following examination of various machines and subjecting them to scientific tests, a committee advocated purchase of those offered by the contracting company, at a price of $58 each, installed. However, in the contract (in record) which plaintiffs allege was executed, the price was fixed at $29.75 per meter, installed. This difference is not explained, and the only conclusion to be drawn is that the city contracted for a machine not recommended or selected.

But we need not discuss this feature, since we conclude that in the condition of the record, we cannot pass upon the question presented on the original appeal, for the reason that the contractor is not before this court, nor was he a party in the suit below, which was in essence, and declared to be one seeking a declaration of rights of parties, authorized by Section 639a—1 et seq., Civil Code of Practice, Section 639a—6 of which provides that the court may refuse its power to declare rights, in any case where a decision under it would not terminate the uncertainty of the controversy, and may either dismiss or remand.

The contract here involves a bit of money; it is but fit and proper that the interested contractor have his day in court. Persons whose interests are affected by declarations must be made parties. Ezzell v. Exall, 207 Ky. 615, 269 S. W. 752; Heller & Co. v. Hunt Forbes Const. Co., 222 Ky. 564, 1 S. W. (2d) 970; Jefferson County v. Jefferson County Fiscal Court, 259 Ky. 661, 83 S. W. (2d) 16; Mason's Adm'r v. Mason's Guardian, 239 Ky. 208, 39 S. W. (2d) 211; First & Peoples Bank of Russell v. City of Russell, 279 Ky. 849, 132 S. W. (2d) 304.

Under the authorities above cited the chancellor should not have determined the issue until parties in interest were before the court. Jefferson County v. Court, supra, and cases cited. It follows that so much of the

judgment as holds the ordinance valid is affirmed; that part which determined the rights in relation to the contract is reversed and remanded for such proceedings as parties may desire to take, not inconsistent with this opinion. The cost on appeal to be equally divided between appellants and appellees.

The whole court sitting.